

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,833

**MARCUS DRUERY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON REVIEW FROM THE DENIAL OF A MOTION TO DETERMINE EXECUTION COMPETENCY FROM CAUSE NO. 03-00001-CRF-85 OF THE 85TH DISTRICT COURT BRAZOS COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, JOHNSON, KEASLER, COCHRAN, and ALCALA, JJ., joined. WOMACK, J., concurred.

## O P I N I O N

Appellant, Marcus Druery, was convicted of capital murder and sentenced to death in 2003.  Shortly before his scheduled execution on August 1, 2012, he filed a motion to

determine competency to be executed under Article 46.05.[1] The trial court held an informal hearing, found that Appellant had not made a "substantial showing" of incompetency and denied the motion. As a result of denying Appellant's motion, there was no formal hearing on the merits to determine if Appellant was incompetent to be executed. Appellant moved to send the record to this Court, and the trial court granted that motion.

After reviewing the record, we determined that further review was needed and stayed the execution. *See Druery v. State*, No. AP-76,833 (Tex. Crim. App. July 27, 2012) (per curiam) (not designated for publication). On August 9, 2012, we ordered briefing from the parties concerning five issues. Having reviewed the parties' briefing on these issues, we find that Appellant made a substantial showing of incompetency to be executed, and so he is entitled to further proceedings, including the appointment of "at least two mental health experts" and a determination regarding competency. *See* Art. 46.05(f), (k).

## I. Background

The facts of the offense are summarized in our opinion on direct appeal. *Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007). However, a thorough explanation of the facts underlying the competency issue is helpful in resolving the issues before us. After Appellant had exhausted his direct appeals, but while his petition for a writ of certiorari

---

[1] Unless otherwise indicated all references to Articles or Chapters refer to the Code of Criminal Procedure.

on his federal writ of habeas corpus was still pending before the United States Supreme Court, the State asked the trial court to schedule an execution date. The trial court held a hearing on February 16, 2012. At the hearing, the State argued that the Supreme Court's certiorari decision would not conflict with a scheduled execution date "91 days out." Appellant's writ counsel advised the court that he anticipated proceeding under Chapter 46 based on his concerns about Appellant's competency to be executed. *See* Art. 46.05. He argued that it was not practical to schedule an execution date before the Chapter 46 proceedings were resolved.

The trial court scheduled an execution date of August 1, 2012, which it believed would provide sufficient time to resolve the matter of Appellant's competency to be executed, and ordered Appellant to file a competency motion by Monday, April 16, 2012.

After that hearing, the federal district court that had appointed the original writ counsel granted that counsel's motion to withdraw and appointed different counsel "to represent Druery throughout the remainder of the federal habeas process." On March 22, 2012, attorneys from the Texas Defender Service ("TDS") filed in the state court a motion for appointment of counsel in the Chapter 46 proceeding. The State filed an answer arguing that Appellant's motion for counsel should be denied because he was not entitled to counsel to prepare an Article 46.05 motion. The State also questioned whether the TDS attorneys were the best choice to represent Appellant in competency proceedings

and suggested some alternatives. The TDS attorneys filed a reply, objecting to the State's interference in the matters of whether to appoint counsel and the choice of counsel.

On April 12, 2012—four days before the court-ordered filing deadline—Appellant filed a motion for discovery, requesting all of his Texas Department of Criminal Justice ("TDCJ") and Brazos County jail records. On April 16, Appellant did not file an Article 46.05 motion but instead filed a "notice," indicating that he could not file a competency motion at that time because the court had not yet ruled on his pending motions, including his motion for appointment of counsel, his motion for discovery, and an ex parte motion for funding.

The court held a hearing on Appellant's pending motions on April 24, 2012. At that hearing, the State again argued that Appellant was not entitled to counsel until after he filed an Article 46.05 motion that made a threshold showing of incompetency. The trial court expressed frustration with the delay and with Appellant's request to extend the filing deadline by an additional 60 days. The judge stated that a competency motion did not require discovery and that defense counsel should not need 60 days to put together a motion with a single affidavit establishing incompetency. Appellant's counsel stated that they had "to have every piece of evidence possible to show that we have made that threshold . . . . [I]n order to do that we need not only the records[,] . . . [but] we need up-to-date records of his treatment at TDCJ for all purposes . . . ." The judge stated that he wanted to hear about the facts, not the procedures, and that Appellant's attorneys were

not letting him make a determination because they would not give him the facts to support their incompetency claim.

Appellant's attorneys responded that they wanted to develop and present the facts, but "we'd really like to give you the most comprehensive set of facts so that you really can consider the entire record . . . ." The court responded:

> This is not as difficult as you're making it out to be. The filing of a 46.05 motion does not require as much effort as you think it does. There need only be a threshold showing that would be sufficient for the Court to appoint psychiatrists to take a look at it . . . . You don't have to marshal your entire argument. You just need to open the door so that I can look in.

Appellant's attorneys reasoned that they had to complete their investigation and marshal their entire argument in the competency motion because, if they did not, and if the trial court found that the motion did not make a threshold showing of incompetency, the presumption of competency under Article 46.05(e) would apply to any future competency motions.[2] In addition, they would not be allowed to develop the record if they sought review in federal court.

---

[2]Article 46.05(e) states that

> If a defendant is determined to have previously filed a motion under this article, and has previously been determined to be competent to be executed, the previous adjudication creates a presumption of competency and the defendant is not entitled to a hearing on the subsequent motion filed under this article, unless the defendant makes a prima facie showing of a substantial change in circumstances sufficient to raise a significant question as to the defendant's competency to be executed at the time of filing the subsequent motion under this article.

Art. 46.05(e).

The judge granted Appellant's motions for appointment of counsel and discovery, stating that the proceeding was already so adversarial that Appellant was entitled to counsel. He added that Appellant had "filed his own request for counsel for a DNA testing," and that he had "done quite a good job." Appellant's counsel stated that this motion was evidence of Appellant's delusional state. The judge emphasized that the new filing deadline was May 24, 2012.

Appellant later filed a motion to compel discovery,[3] and on May 14, the trial court held a hearing on that motion. The State acknowledged that it had not provided complete records for defense counsel's review, but it added that the records being collected from the state agencies should go directly to the trial court so that the State would not be blamed for misplacing or omitting anything. The State also expressed confusion as to why Appellant's counsel could not subpoena the records directly from the state agencies. The trial court stated that the records could go to the court clerk's office, where they would be available for defense counsel to review during regular business hours.

Defense counsel requested another extension of time to file the Article 46.05 competency motion, asserting that the discovery delay, plus the anticipated delay associated with having to review records at the courthouse and designate the documents to be copied by the clerk, would prevent them from filing the Article 46.05 competency

---

[3]The motion included in the record does not have a time stamp. However, the certificate of delivery, signed by defense counsel, indicates that a copy was served on the Brazos County District Attorney's Office on May 5, 2012.

motion by May 24. The trial court responded, "All you have to do is make a threshold showing to the Court. You don't have to marshal your entire case." Counsel responded, "Our goal is to do this correctly here . . . . And while I . . . agree with Your Honor that the threshold is low, we'd like to make the best case possible so we don't have to do this again in federal court." The Court responded, "This began in February, it is now May, the execution date is in August. . . . That's why I'm denying any further request for an extension of time . . . . [T]en days is plenty of time to prepare a threshold motion." Appellant's attorneys reiterated that they needed to "present as much evidence as possible" in case the matter went to federal court, "not to mention our expert is going to need time to review these documents . . . so that we can incorporate her report into our 46.05 [motion]." Counsel also requested that all of the records be copied at county expense and delivered to TDS, but they acknowledged that they did not know how many pages there were or which records were relevant. The court denied the request.

On May 24, 2012, instead of filing his Article 46.05 motion, Appellant filed another "notice," informing the trial court that he could not file an Article 46.05 motion at that time because the State had not provided discovery. Following the court's previous denial of the motion to compel discovery, Appellant's counsel had served subpoenas on eight state agencies, but had not yet received the subpoenaed records. A mental-health expert, Dr. Diane Mosnik, had interviewed Appellant and conducted psychological testing, but she could not render a definitive opinion without reviewing the records that

not yet been received. "[C]ounsel cannot file an Article 46.05 motion until the investigation is complete and they can allege all facts relevant to a *Ford* claim." *See Ford v. Wainwright*, 477 U.S. 399 (1986).

The trial court scheduled a June 29 show-cause hearing for Appellant's counsel to explain the delays and missed filing deadlines. At that hearing, counsel stated that they expected their expert to have a completed report by July 11, and they would file the competency motion as soon as practicable after that. Counsel explained that they issued subpoenas to the state agencies on May 17, but they did not receive all of the records until June 6. After combing through 5,538 pages, they sent the records they deemed relevant to their expert on June 18. Counsel stated that they "sought to present and exhaust all of the evidence possible in support of the claim that Mr. Druery is incompetent . . . ." They reiterated that defense counsel had "a duty to present and exhaust and preserve all of the evidence in support of our incompetency-to-be-executed claim, . . . ." citing the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the State Bar Guidelines for Capital Counsel, and Article 46.05. In explaining the duty imposed by AEDPA and the Bar Guidelines, counsel assumed that the rules applicable to habeas counsel were applicable to a defendant's counsel in an Article 46.05 proceeding. They repeated that Article 46.05(e) creates a presumption of competency after the first motion has been adjudicated, thus making it incumbent upon counsel to thoroughly investigate and include all supporting evidence with the first competency motion. Finally, counsel stated that,

under Article 46.05(l-1), the motion would be timely if it was filed 21 days in advance of the execution date, and they had not missed that deadline.[4]

The trial court stated that it was not possible for it to make a threshold determination and then proceed on the merits under Chapter 46 with the appointment of two mental-health experts and a hearing in 20 days, which was why he had set the execution date for August and ordered earlier filing deadlines to determine if the necessary threshold showing could be made by Appellant. The judge did not understand why, if the records went to the expert on June 18, and if the expert met with Appellant on May 14 and 15, defense counsel still had not filed a competency motion as of June 29:

> All you had to do was file a 46.05 motion that raised sufficient evidence for this Court to appoint two experts to evaluate him, and I need more than 20 days to do that[,] . . . [a]nd I set the execution date out far enough in advance to give you the time to do that. . . . I put it off to August the 1st for the defendant's benefit to allow time for this Court to be able to fairly and adequately evaluate the issue before the execution date.

The court observed that defense counsel's conduct created a situation in which a trial court would not be willing to grant any extra time to prepare a competency motion in future cases, but then it would be forced to stay the execution dates to litigate competency motions. The judge stated, "All you have to do is show some evidence. . . . That's less

---

[4] Although Appellant's counsel described Article 46.05(l-1)'s time frame as a filing deadline, we note that Appellant was free to file a competency motion at any time before his scheduled execution. Article 46.05(l-1) operates to restrict this Court's review of the trial court's competency finding as a result of a motion that was filed on or after the 20th day before the scheduled execution date, but it does not prevent a defendant from filing, or a trial court from considering, a later-filed motion in the trial court.

than probable cause." The State added that defense counsel had ample opportunity to file a competency motion, "which only had to make a prima facie showing of incompetency." The court again ordered counsel to file a motion, adding, "I want to see the evidence that you have. If y'all don't file a motion, I can't see it . . . . If you've got any evidence, I need to see it so I can get two psychiatrists appointed."

The judge also asked Appellant if he wanted to add anything with respect to the decision of whether to "keep" his attorneys. Appellant's attorneys advised him not to speak, but Appellant chose to address the court. He described non-existent evidence that he believed should have been presented during his trial, appeals, and habeas proceedings, and he expressed frustration that he never had a chance to present that evidence. The judge tried to redirect him, stating that the question at the hearing was whether "to continue [with] these two lawyers representing you on the motion[,] . . . ." and asking him again about his wishes in that regard. Appellant again complained about the performance of counsel in prior proceedings and noted that his current attorneys had also failed to bring in exculpatory evidence. He stated that this failure rendered his current attorneys ineffective. The court explained that Appellant's appeals were exhausted, and that his current attorneys did not have the ability to raise those issues. Appellant claimed that he had a hard time accepting this idea and repeated that he had new evidence and that he was not guilty of the offense. When the court asked him specifically whether he had anything to say about keeping his lawyers, Appellant asked whether another attorney could be

added to them. The court declined to add another attorney and then inquired whether the State had anything to present.

The State responded that it still favored the appointment of different counsel, and it pointed out that Appellant's counsel had insisted on requesting discovery through the State, but then cited the State's failures as a reason for failing to comply with the court-ordered deadlines, although counsel successfully subpoenaed the records when the discovery process became too cumbersome. The State also reminded the court that when Appellant's attorneys first requested discovery, it had suggested that they could subpoena the records.

After asking Appellant's father for his opinion, the trial judge indicated that he would allow Appellant's attorneys to continue representing Appellant and ordered them to file a competency motion by July 11. Appellant interjected and again tried to explain that he had exculpatory evidence that had not been presented and that he was not guilty of the offense. The court and counsel did not respond to his attempts to address the court. Appellant's counsel requested a transcript of the hearing, and the court ordered a transcription of Appellant's statements but otherwise denied the request, stating that there was no appealable issue because counsel still had not filed a competency motion.

On July 11, 2012, Appellant filed his motion to determine competency to be executed under Article 46.05. Twelve days later, he filed a supplement to that motion. The State submitted a response,[5] and the trial court held a hearing on July 24, 2012.

Appellant's Article 46.05 motion stated that he was not competent to be executed. Specifically, "Because his psychotic disorder prevents a rational understanding of the connection between his crime and his punishment, the State's interest in retribution cannot be served by his execution and his execution would violate the Eighth and Fourteenth Amendments to the United States Constitution." The motion alleged that Appellant suffered from undifferentiated schizophrenia with features of paranoid and disorganized subtypes, and he set out the history of his mental deterioration while in prison. It also discussed the results of Dr. Diane Mosnik's interview and evaluation. Dr. Mosnik observed that Appellant suffered from low-to-average intellectual functioning, cognitive impairments consistent with schizophrenia, persecutory and referential delusions, and thought disorder. Appellant had no insight into his illness and a limited understanding of his legal situation. He had a severely distorted understanding of the facts of his case (as compared to the facts shown by the record) and was unable to recognize or rationally understand the facts and what they implied for his legal situation. In Dr.

---

[5]There are two time stamps on the State's response to Appellant's 46.05 motion. The first notes that the State's response was received July 23, 2012, the same day Appellant filed his supplement. However, the second time stamp reveals that the State's response was filed in the district clerk's office at 11:40 a.m. on July 25, 2012, one day after the hearing on Appellant's motion.

Mosnik's opinion, the severity and nature of Appellant's mental illness deprived him of a rational understanding of the connection between his crime and punishment. He was factually aware of his execution date, but he did not believe it would happen. Dr. Mosnik stated that Appellant "sees no other applicable legal posture apart from his delusional beliefs supporting his innocence. . . . Because of his inflexible, psychotic, and delusional interpretation of his circumstances, [Appellant] does not have the capacity to rationally understand the connection between his crime and his punishment." Appellant attached Dr. Mosnik's report in support of his motion.

Appellant's supplement to the motion provided "additional factual support for the contention that he suffers from a severe, active psychotic condition that renders him unable to rationally understand the reason for his pending execution." It described letters that Appellant sent to various people about: his persecution in prison; his innocence; conspiracies against him by inmates, guards, attorneys, friends, and family members; a monetary settlement that was being kept from him; and other matters. Some of these letters were sprinkled with names of celebrities and officials that Appellant believed would have helpful information.

In letters written by Appellant, he listed a variety of reasons why he was entitled to a stay of execution. His reasons reflected that he had some understanding of the legal system, but they also signaled that he was out of touch with reality. For example, he asserted that the victim tried to kill him and shot him as well as other people; "someone

else shot the [victim]," who was in the process of attacking several people; Appellant "had a bad childhood[,]" including being kidnapped "for a couple of weeks" and being tortured; witnesses in his case lied; his execution date was a mistake because he should be the serving a different sentence that had been promised to him; he had already been ordered released, but that paperwork was buried as part of a conspiracy against him; and his parents and attorneys were conspiring to hide favorable evidence to keep millions of dollars from Appellant's settlement and profits from his previous businesses for themselves.

The supplement to the motion also referred to Appellant's colloquy with the court at the show-cause hearing on June 29, 2012, during which he mentioned non-existent exculpatory evidence (including photographs and medical records) and questioned why current counsel had never filed anything based on the "fact" that someone else gave a recorded confession. Appellant's letters and the reporter's record of the colloquy were attached in support of Appellant's motion. Defense counsel acknowledged at the hearing that Appellant had a factual understanding of the execution date, but they contested whether Appellant had a rational understanding of the execution date based on his stated beliefs that conspirators were interfering with his case and keeping him in prison.

The State argued in its response, and at the hearing, that Appellant had not made a "substantial showing" that he was incompetent because he had acknowledged that he was aware that he was to be executed and that his execution was imminent. The State asserted

that Appellant "knows that this is about the death of Skyyler Browne and that he's been accused of killing Skyyler Browne and now, like most inmates probably on death row, they are saying they didn't do it right before they're about to be executed." The State pointed out that the Supreme Court has not defined "rational understanding"; however, after *Panetti v. Quarterman,* 551 U.S. 930 (2007) was remanded to the federal district court, Panetti was found competent to be executed because he knew that he killed the victims, knew of his impending execution, and knew the causal connection between his crime and execution. Panetti's belief that his conviction was wrongful because he had been mentally ill at the time of the murders did not mean that he was incompetent to be executed. The State urged that this case required the same result: As in *Panetti*,[6] "the defendant has a rational[] understanding that he is being executed for committing the murder of [the victim]," notwithstanding his delusions. "[H]e rationally articulates that . . . he 'suffers from a wrongful conviction' for shooting [the victim] and robbing him of his property."

The trial court found that Appellant had not made a "substantial showing" of incompetency and denied the motion, stating:

> I've reviewed everything that has been filed here and it appears that you've established that he has some form of a mental illness, but whether or not that establishes the minimum threshold here that he doesn't understand that he's going to be executed and why he's going to be executed - - that's what concerns me here. The statements that the defendant made in the courtroom

---

[6]*Panetti v. Quarterman,* No. A-04-CA-042-SS, 2008 WL 2338498 (W.D. Tex. Mar. 26, 2008).

at the [show-cause] hearing really tend to show me that he does understand that he - - why he's being executed.

Thus, based on Appellant's statements at the show-cause hearing that indicated he knew that he had been convicted of capital murder and that he would be executed, the trial court ended the inquiry, notwithstanding Appellant's additional statements and his expert's report. We now turn to the issues currently before this Court.

## II. Verification requirement of Article 46.05(c)

Before considering the merits of Appellant's claim for relief, we will consider whether we have jurisdiction to review Appellant's Article 46.05 motion even though it was not verified as required by law. Article 46.05(b) states that the trial court retains jurisdiction over motions filed by or for a defendant under this article. Article 46.05(l) provides that following the trial court's determination and on motion of a party, this Court will review the appropriate documents and enter a judgment of whether to adopt the trial court's "order, findings, or recommendations issued under Subsection (g) or (k)." Art. 46.05(l). Additionally, Article 46.05(c) states that a motion filed under this article "must be verified by the oath of some person on the defendant's behalf."

In the context of both habeas applications and motions for new trial, we have suggested that a lack of verification does not prevent the trial court from acting and does not prevent this Court from reviewing the trial court's action. *See, e.g.*, *Ex parte Golden*, 991 S.W.2d 859, 861 (Tex. Crim. App. 1999) ("[N]othing in Article 11.14 indicates it was intended to limit the jurisdiction of this Court to consider [a habeas] application not

in compliance with the oath requirement or any of its other requisites. . . . It is worded as a pleading requirement and does not contain words of prohibition . . . ."); *Connor v. State*, 877 S.W.2d 325, 326 (Tex. Crim. App. 1994) (when trial court treated a letter from the appellant as a pro se motion for new trial and held a hearing on it, court of appeals erred in finding that, because the letter was not verified or supported by affidavits, it was not a valid motion and the appellant was not entitled to counsel at the hearing); *Rouse v. State*, 300 S.W.3d 754, 758–59, 761–62 (Tex. Crim. App. 2009) (unsworn post-trial motion that had been overruled by operation of law was not self-proving, and evidence offered in support of it could not be considered for first time on appeal; evidence must first be considered in a hearing before the trial court, giving the non-movant an opportunity to respond). Our opinions in these cases suggest that a verification requirement is to some extent rendered moot when the trial court conducts a hearing and the non-moving party has an opportunity to respond, does not object to the lack of verification, and addresses the substance of the motion on the merits. *See Golden*, 991 S.W.2d at 862 n.2; *see also* Art. 1.052(b);[7] *Connor*, 877 S.W.2d at 326; *Rouse*, 300 S.W.3d at 758–59, 761–62.

---

[7]Subsection (b) of Article 1.052 states,

> The signature of an attorney or a defendant constitutes a certificate by the attorney or defendant that the person has read the pleading, motion, or other paper and that to the best of the person's knowledge, information, and belief formed after reasonable inquiry that the instrument is not groundless and brought in bad faith or groundless and brought for harassment, unnecessary delay, or other improper purpose.

In this case, the trial court considered the signed motion and supporting documentation, and the non-movant had an opportunity to respond at a hearing. The non-movant did not object to the lack of verification or suggest that the motion and supporting documentation were false. Rather, the parties and the court addressed the question of whether Appellant's Article 46.05 motion and supporting documentation, considered along with the non-movant's responsive pleading and Appellant's statements during a prior hearing, were sufficient to make a substantial showing of incompetence. We conclude that the lack of verification in this case, under these limited circumstances, does not prevent this Court from reviewing the competency motion and the proceedings in the trial court.

**III. This Court's review of a "substantial showing" determination**

Statutory construction is a question of law subject to de novo review. *See Krause v. State*, 405 S.W.3d 82, 85 (Tex. Crim. App. 2013). When interpreting the meaning of a statute, we seek to effectuate the collective intent of the legislators who enacted the statute. *Id.* We first look to the plain language of a statute, but if the text of the statute is ambiguous or would lead to absurd consequences that the Legislature could not possibly have intended, we may consider extra-textual sources, such as the legislative history and the consequences of a particular construction. *Id.* In construing a statute, we may consider, among other matters, the (1) object sought to be attained by the statute; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common

law or former statutory provisions, including laws on the same or similar subjects; (5)

consequences of a particular construction; (6) administrative construction of the statute;

and (7) the statute's title (caption), preamble, and emergency provision. *See Ex parte*

*Valdez*, 401 S.W.3d 651, 655 (Tex. Crim. App. 2013). After reviewing the plain text,

concluding that it is ambiguous, and consulting the legislative history, we hold that

Article 46.05 provides for this Court's review of a trial judge's determination that

Appellant has failed to make a substantial showing of incompetency.

Prior to the enactment of House Bill 1545 in 2007, only a trial court's

determination regarding incompetency under Subsection (k) was appealable (i.e., in

practice only the State appealed under Article 46). *See Ex parte Caldwell*, 58 S.W.3d 127,

130 (Tex. Crim. App. 2000). The defendant could not appeal a preliminary determination

that he had not made a substantial showing under Article 46.05(g). Moreover, the State

would not need to appeal if a defendant made a substantial showing of incompetency

because that determination was not "final," but instead led to further fact-finding

proceedings, followed by a "final" determination under Subsection (k) (after appointment

of experts and evaluations). *See Caldwell*, 58 S.W.3d at 130; *see also Green v. State*, 374

S.W.3d 434, 449 & n.14 (Tex. Crim. App. 2012) (Price, J., concurring).

The Legislature amended the statute in 2007.[8] In relevant part, Subsection (l),

which now governs appeals to this Court under Article 46 currently states,

> Following the trial court's determination under Subsection (k) and on
> motion of a party, the clerk shall send immediately to the court of criminal
> appeals . . . the appropriate documents for that court's review and entry of a
> judgment of whether to adopt the trial court's order, findings, or
> recommendations issued under Subsection (g) or (k).

Art. 46.05(l). The expanded statute now allows for a defendant and the State to appeal a

trial judge's "final" determination under Subsection (k). Art. 46.05(l) (stating, in part,

when the Court of Criminal Appeals can review the rulings of a trial court under Article

---

[8]In relevant part, former Article 46.05—Competency to be Executed—stated:

\*　　\*　　\*

(g) If the trial court does not determine that the defendant has made a substantial
showing of incompetency, the court shall deny the motion.

\*　　\*　　\*

(k) If, on the basis of reports provided under Subsection (i), the motion, any
attached documents, any responsive pleadings, and any evidence introduced in the
final competency hearing, the trial court makes a finding by a preponderance of
the evidence that the defendant is incompetent to be executed, the clerk shall send
immediately to the court of criminal appeals in accordance with Section 8(d),
Article 11.071, the appropriate documents for that court's determination of
whether any existing execution date should be withdrawn and a stay of execution
issued. If a stay of execution is issued by the court of criminal appeals, the trial
court periodically shall order that the defendant be reexamined by mental health
experts to determine whether the defendant is no longer incompetent to be
executed.

(l) If the trial court does not make a finding as described by Subsection (k), the
court may set an execution date as otherwise provided by law.

Art. 46.05 (2006).

46). However, the amendment also created an internal ambiguity in the statute. Under the current version, this Court can review a trial court's rulings on the motion of either party and "[f]ollowing the trial court's determination under Subsection (k)." However, the latter portion of the provision states that this Court reviews and enters judgment on the trial court's "order, findings, or recommendations issued under Subsection (g) [preliminary ruling on substantial showing] or (k) [determination regarding competency after appointment of experts and evaluations]." *See id.* The ambiguity is that the Legislature either intended for a defendant to be able to appeal rulings under only Subsection (k), which would render the language "Subsection (g) or . . ." at the end of Subsection (l) superfluous, or the Legislature intended for a defendant to be able to appeal an adverse ruling by the trial court under Subsection (g) and (k), and the omission of "Subsection (g) or . . ." in the first clause was an oversight. We first look to the language of the statute.

The latter phrase "order, findings, or recommendations issued under Subsection (g) *or* (k)" at a minimum indicates, by its use of the word "or," that the Legislature contemplated that this Court could review a finding by the trial court under only Subsection (g) (i.e., when a defendant fails to make a substantial showing), as well as under Subsection (k), if a hearing is held. *See id.* (emphasis supplied). This distinction—whether a defendant can appeal a trial court's adverse threshold ruling on competency—is relevant because the only party with a strong interest in appealing a trial court's threshold determination is the defendant. For example, under the old rule, if a

defendant made a substantial showing of incompetency to be executed, but the trial court erroneously overruled the defendant's motion, the defendant could not appeal. *See Caldwell*, 58 S.W.3d at 130. Moreover, under the current statute, the trial court can also schedule a defendant's execution date once it has denied the defendant's motion because of a failure to make a substantial showing. *See* Art. 46.05(g). However, even if a defendant successfully makes a threshold showing of substantial incompetency, the State has another opportunity to prevail at the Subsection (k) hearing and can appeal an adverse ruling from that formal hearing (under both statutes). While this syntax is some evidence of the legislative intent, we now look to the legislative history of the 2007 amendment to shed light on the ambiguity in this new statutory provision.

The bill analyses consistently describe the 2007 change as equalizing the review process to allow either party to appeal a trial court's determination regarding competency. *See* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007); HOUSE CRIMINAL JURISPRUDENCE COMM., BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007); SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 1545, 80th Leg., R.S. (2007). However, the legislative history does not offer a solution for the discrepancy in Subsection (l).

The most likely reason for the discrepancy in Article 46.05(l) is that the first reference to Subsection (k), which omits a reference to Subsection (g), is an oversight. Such an interpretation resolves the ambiguity and does not lead to absurd results. While it

is possible to interpret Subsection (l) to permit this Court to review a trial judge's determination under only Subsection (k), we believe that such an interpretation would lead to absurd results. In light of the language of the statute and the bill analyses, the most reasonable interpretation of the 2007 change to Article 46.05 is that the change was intended to facilitate review in this Court of a trial court's determination regarding competency made under Subsection (g) or (k), so long as the competency motion was filed prior to the 20th day before the scheduled execution date. *See* Art. 46.05(l-1). We conclude that Article 46.05 permits us to review a trial court's determination that a defendant has not made a substantial showing of incompetency.

**IV. Review of documents filed within 20 days of the scheduled execution date**

Article 46.05(l-1) states that this Court may not review any competency finding made as the result of a competency motion filed on or after the 20th day before the scheduled execution date. In this case, Appellant's competency motion was timely filed, but Appellant filed a supplement to the motion less than twenty days before the scheduled execution date. Therefore we will consider whether the language of Article 46.05(l-1) operates to bar this Court's review of the supplement.

Although not directly on point, and not necessarily binding authority, some cases suggest that Article 46.05 (l-1)'s bar on this Court's review should be construed narrowly. *See, e.g., Wood v. Thaler*, 787 F. Supp. 2d 458, 487 (W.D. Tex. 2011) (describing Article 46.05(l-1)'s bar on appellate review of late-filed competency motions as an "arbitrary

procedural barrier" that did not foreclose federal habeas review when this Court dismissed the application without expressly relying on the bar; if the state court denied the defendant a reasonable opportunity to present his claim despite a threshold showing, the federal court "must" consider the claim); *see also Green*, 374 S.W.3d at 436–37, 440–44 (Tex. Crim. App. 2012) (without discussing Article 46.05(l-1), reviewing merits of competency motion filed seven days before scheduled 2010 execution date).

In the context of capital habeas review, albeit in unpublished decisions, we have sometimes considered supporting materials that were filed after a timely habeas application was filed, but while the application was still pending, so long as the supporting materials were first considered by the trial court and they did not change the pending claims or add new claims. *See, e.g*, *Ex parte Holberg*, No. WR-68,994-01, 2008 WL 152725, *1 (Tex. Crim. App. Jan. 16, 2008) (per curiam) (not designated for publication). Following this reasoning in the context of Chapter 46 proceedings, when Article 46.05(b) expressly places jurisdiction in the trial court, it appears that Article 46.05(l-1) does not prevent this Court from considering supporting materials filed in the trial court before the judge made a determination regarding competency under Subsection (g) or before or during the "final competency hearing" described in Subsection (k).

In this case, Appellant timely filed his competency motion, his supplement to the motion was filed the day before the hearing on the motion, and the State did not object that the supplement was untimely for purposes of appellate review. *See, e.g.*, *State v.*

*Moore*, 225 S.W.3d 556, 557 (Tex. Crim. App. 2007) (holding that the State must object to untimely amended motion for new trial; otherwise trial court may grant it). Therefore, we will review the supplement to the motion.

**V. Standard of review applicable to a determination that Appellant failed to make a "substantial showing," and what constitutes a "substantial showing"**

The question of what constitutes a "substantial showing" of incompetency is a legal question, subject to de novo review. *See Panetti v. Stephens*, Nos. 08-70015, 08-70016, 2013 WL 4458793, at *34–37 (5th Cir. Aug. 21, 2013) (whether lower court applied correct standard in assessing competency is a legal question to be reviewed de novo); *see also Krause*, 405 S.W.3d at 85 (statutory construction is a question of law subject to de novo review). Further, if the trial court did not comply with Article 46.05 or violated due process, we will review its determination de novo. *See, e.g*, *Panetti v. Dretke*, 401 F. Supp. 2d 702, 705–06 (W.D. Tex. 2004) (declining to defer to state trial court's determination regarding competency when state-court proceedings did not comply with Article 46.05 and violated due process by failing to give petitioner opportunity to present as well as rebut evidence; "*Ford*, as a matter of due process, demands a de novo review of the petitioner's competency to be executed.").

Under Article 46.05, a "substantial showing" requires more than "some evidence" of incompetency, but less than establishing incompetency by a preponderance of the evidence. If resolution of the competency motion requires resolving disputed material facts and conflicting credible evidence on the question of the defendant's incompetency,

then the defendant has "made a substantial showing," and additional fact-finding and a hearing are required under Subsection (k). We have reached this conclusion after reviewing cases addressing federal constitutional considerations, Texas cases addressing analogous "threshold" determinations, the language and structure of Article 46.05 itself, and cases from other jurisdictions describing substantive and procedural requirements for the preliminary competency-to-be-executed determination.

### A. Federal constitutional considerations

*Ford* did not specify the pleading or supporting evidence required to make the threshold showing that would trigger the full process of resolving the competency question. *See Ford*, 477 U.S. at 425–26 (Powell, J., concurring) (stating that the State may presume that the defendant remains sane at the time the sentence is to be carried out and may require a substantial threshold showing of insanity merely to trigger the hearing process). In *Panetti,* the Supreme Court stated that the trial court "confirmed" that the Appellant had made a substantial showing when it appointed two mental-health experts as contemplated in Subsection (f). *Panetti*, 551 U.S. at 950. The Court also stated that the determination that Panetti made a "substantial threshold showing" was verified by its independent review of the record, which included "pointed observations made by two experts" the day before the execution date and incorporated reference to extensive evidence of mental dysfunction considered in earlier proceedings. *Id.* Thus, the Supreme

Court has provided only a general description of the evidence that supports a "substantial showing."

Similarly, the federal district court's decision in *Panetti* after remand did not specify the pleading and evidence required to make a "substantial showing" of incompetency. *See Panetti*, 2008 WL at *14–15 (indicating that the federal district court stayed execution so that the appellant could first present to the state court a psychologist's report and a law professor's affidavit containing their conclusions that Panetti suffered from delusions that prevented him from understanding whether, and why, he was to be executed. The state court appointed experts under Subsection (f), thereby "implicitly finding" that Panetti had made a substantial showing).

The State relies on *Patterson v. Dretke*, 370 F.3d 480 (5th Cir. 2004), a Fifth Circuit case that predated *Panetti* and House Bill 1545. In *Patterson*, the court discussed whether a state trial court erred in determining that an appellant had not made a "substantial showing" of incompetency, but the court did so through the deferential lens of federal habeas review, ultimately finding that the state trial court's decision was "not an unreasonable determination of the facts in the light of the evidence presented to it" and that the petitioner had not shown that the state trial court's decision was "contrary to, or an unreasonable application of *Ford*." *Patterson*, 370 F.3d at 484–85. The court acknowledged evidence that Patterson was mentally ill and had expressed the belief that he had been granted amnesty and a stay of execution but the court noted that he had also

written to various courts requesting stays of execution, and that his expert had ignored such evidence in opining that Patterson did not understand that he was going to be executed and why. *Id.* Thus, the *Patterson* Court affirmed the state trial court's decision under Article 46.05(g) on the basis of evidence that supported the state court's decision, but that court did not attempt to specify the requirements for making a threshold "substantial showing." Therefore, *Patterson* is not helpful in resolving the question currently before us.

### B. *Analogous threshold determinations*

Some insight can be gained from other situations in which a defendant must make a threshold showing to the trial court before obtaining consideration of the merits of his or her claims. In the closely analogous situation of a defendant's motion concerning his competency to stand trial under Chapter 46B, the trial court first determines if the evidence raises a suggestion that the defendant is incompetent to stand trial. *See Montoya v. State*, 291 S.W.3d 420, 424–25 (Tex. Crim. App. 2009) (applying the old bona-fide doubt standard); *see also* Art. 46B.004(c-1) (suggestion of incompetency is sufficient to require an informal competency inquiry and explicitly rejecting the bona-fide doubt standard). If the trial judge finds that there is a suggestion of incompetency, he or she shall conduct an informal inquiry to determine if "there is some evidence from any source" that would support a finding that the defendant is incompetent to stand trial. *See Ex parte Lahood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013). We have described

"some evidence" of incompetency to stand trial as a quantum of evidence that is "more than none or a scintilla, that rationally may lead to a conclusion of incompetence." *Id.*

In conducting this informal inquiry, the trial judge should not weigh competing evidence of incompetency because the informal hearing is not the appropriate venue for determining the merits of the claim. Rather, the informal inquiry is intended to determine if the issue is sufficiently raised to merit a formal hearing. *See id.* & n.5 (citing *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980)). A determination that there is "some evidence" of incompetency then leads to a formal hearing before a jury. *Id.* At that hearing, the defendant must prove his incompetence by a preponderance of the evidence. *See Morris v. State*, 301 S.W.3d 281, 287 (Tex. Crim. App. 2009) (citing Art. 46B.003(b)).

This standard is similar to the "some evidence" standard that is required before a defendant is entitled to a jury instruction on the affirmative defense of insanity. *See, e.g.*, *Coble v. State*, 871 S.W.2d 192, 201 (Tex. Crim. App. 1993) (insanity defense shall be submitted to jury if supported by competent evidence); *Gibson v. State*, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987) (jury charge on defensive theory must be given if raised by evidence from any source, even if contradicted by other evidence); *see also Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990) (to prevail on insanity defense, defendant must prove insanity by a preponderance of the evidence).

In the context of state habeas corpus applications, an applicant must allege (and prove) specific facts which, if true, would entitle him to relief. *See Ex parte Maldonado*, 688 S.W.2d 114 (Tex. Crim. App. 1985). Before forwarding the application and habeas record to this Court, the trial court should determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, and if it determines that such issues exist, the trial court should conduct additional fact-finding proceedings to resolve them. *See, e.g., Ex parte Medina*, 361 S.W.3d 633, 638 (Tex. Crim. App. 2011). In general, we will remand a habeas application to the trial court for additional fact-finding proceedings if the application contains specific factual allegations which, if true, might merit relief. *See id.* at 637 & nn.10, 11.

These examples are somewhat instructive, but a postconviction competency-to-be-executed claim raises unique considerations that are not found in these other contexts. *See, e.g.*, *Panetti*, 2013 WL 4458793, at *8–9 (distinguishing "rational understanding" inquiry in competency-to-stand-trial analysis from "rational understanding" inquiry in competency-to-be-executed analysis because former is rooted in due process and concerned with a defendant's ability to assist in his defense, while latter arises out of Eighth Amendment concerns for retributive value of punishment and society's abhorrence at killing one who cannot come to grips with his own conscience or deity). These considerations, combined with the language and structure of Article 46.05, suggest that making a "substantial showing" of incompetency to be executed requires

something more than presenting "some evidence" of incompetency, although this threshold burden is less than the final burden of establishing incompetency by a preponderance of the evidence.

## C. Language and structure of Article 46.05

Article 46.05(c) imposes pleading and evidentiary requirements on the competency motion itself—for example, requiring that the motion "clearly set forth alleged facts in support of the assertion" of present incompetence as defined under Subsection (h); that affidavits, records, or other supporting evidence be attached to the motion; that any previous competency proceedings be identified; and that the motion "be verified by the oath of some person on the defendant's behalf." *See* Art. 46.05(c). Subsection (d) provides that, on receipt of the motion, the trial court "shall determine whether the defendant has raised a substantial doubt" on the basis of the motion, its attachments, any responsive pleadings, and any presumption created by a determination regarding competency in a prior Article 46.05 proceeding. Art. 46.05(d). By providing that the trial court will review any responsive pleadings as well as the competency motion and attachments, Subsection (d) suggests that a defendant's "threshold" burden goes beyond simply following the formal requirements of Subsection (c).

On the other hand, Article 46.05 contemplates a scenario in which "some person" acting on the defendant's behalf will be able to make the threshold showing without the benefit of counsel or expert assistance if the defendant's situation merits further

investigation. Article 46.05(c) provides that the competency motion may be verified by the oath of "some person on the defendant's behalf," and Article 46.05 does not expressly contemplate that an attorney will represent the defendant until after the trial court has determined that the defendant has made a substantial showing of incompetency. *See* Art. 46.05(i) (experts who examine the defendant "under this article" must provide "the attorney representing the defendant" with copies of their reports); *Caldwell*, 58 S.W.3d at 130 ("There is no provision in article 46.04 for the appointment of counsel for preparation of a motion to determine competency."); *cf.* Art. 1.051(d)(3), (4) (defendant is entitled to an attorney in a post-conviction habeas-corpus proceeding or any other appellate proceeding if the interests of justice require representation).

Article 46.05 does not contemplate an adversarial proceeding at the "threshold" stage. *See Green*, 374 S.W.3d at 440 (*Panetti* mandates an adequate opportunity to be heard and an adequate opportunity to respond only after a defendant has made a threshold showing of incompetence. Article 46.05 does not infringe upon these rights). Moreover, minimal due-process concerns come into play only if the trial court elects to conduct an adversarial proceeding at this stage. *Compare Wood v. Quarterman*, 572 F. Supp. 2d 814, 817 (W.D. Tex. 2008) (opining that Article 46.05's failure to provide court-appointed counsel and expert assistance until after defendant satisfied the threshold requirement of Article 46.05 by making a "substantial showing of incompetency" was unconstitutional), *with Wood*, 787 F. Supp. 2d at 487 (once petitioner made the threshold showing, it was

incumbent upon trial court to accord petitioner an opportunity to be heard on the merits, including appointment of counsel, a mental-health expert, and an opportunity to present evidence and be heard on the merits).

Finally, Article 46.05(k) specifies that the defendant's burden to prove incompetence at the final hearing is by a preponderance of the evidence. *See* Art. 46.05(k). It follows that the defendant's threshold burden of making a "substantial showing" under Subsections (f) and (g) is less than that. Therefore the trial court should not weigh competing credible evidence in making a determination at the threshold stage. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (defining preponderance of the evidence as the greater weight of credible evidence that would create a reasonable belief in the truth of the claim); *see also Murff v. Pass*, 249 S.W.3d 407, 409 & n.1 (Tex. 2008).

### D. Other jurisdictions

Perhaps in recognition of the limited process provided to defendants at the threshold stage, some other jurisdictions have expressly limited the extent to which a trial court may weigh controverting evidence in making the threshold competency-to-be-executed determination. *See, e.g.*, *Provenzano v. State*, 751 So. 2d 37, 40 (Fla. 1999) (trial court erred when it denied competency motion without a hearing; motion—supported by a psychologist's report concluding that applicant was not competent to be executed and affidavits from his attorney and other inmates relating his

bizarre behavior—established "reasonable grounds to believe" that applicant was incompetent. The State's controverting evidence, which also included expert reports, created factual disputes that needed to be examined and resolved at a hearing); *Billiot v. State*, 515 So. 2d 1234 (Miss. 1987) (offender was entitled to an in-court opportunity to prove his insanity claim when he presented allegations under oath which, if true, "brought into serious question" the legality of his execution); *see also Thompson v. Bell*, 580 F.3d 423, 435–36 (6th Cir. 2009) (finding that defendant's documented history of serious mental illness, opinions of experts, State's prior effort to appoint a conservator to make medical decisions on his behalf, and his expressed delusions concerning his execution, potential retrial, and exoneration made a "threshold showing" that his competency was "genuinely at issue" such that a hearing was required, notwithstanding evidence that defendant seemed to know "on some level" that he was to be executed for killing the victim).

## E. Summary

In sum, the federal constitution allows the states to require a "substantial showing" of incompetency to trigger additional process. In some analogous situations, we have held that the threshold standard triggering additional consideration is "some evidence," and that it is error to weigh competing credible evidence at the threshold phase. Constitutional considerations and the language of Article 46.05 do not provide for an adversarial process at the threshold stage, and a "substantial showing" is more than "some evidence" but less

than a preponderance. Moreover, other jurisdictions have held that it is error for the trial court to weigh controverting evidence and resolve factual disputes in making the threshold competency-to-be-executed determination.

Thus, we conclude that a "substantial showing" is more than "some evidence" but less than a preponderance. Further, if the trial court must resolve material factual disputes in making the threshold competency-to-be-executed determination, then the defendant has made a "substantial showing" of incompetency, triggering additional process under Article 46.05(f) and other subsections.

## VI. Whether Appellant made a "substantial showing"

Having determined the appropriate appellate and trial court standards, we now decide whether the trial court erred in ruling that Appellant failed to make a substantial showing of incompetency to be executed.

There is evidence that Appellant is aware that he was convicted of capital murder and that, at least some of the time, he knows that he is scheduled to be executed. But because of his mental illness, at least some of the time, he does not believe that he committed the charged crime and, therefore, is not aware that he committed the offense for which he was convicted, and he does not think that he will be executed. This evidence is similar to the evidence in *Green,* which supported findings of both competency and incompetency. *See Green*, 374 S.W.3d at 444. However, Green had a full opportunity to present his evidence and develop the record before his competency motion was ultimately

denied on the merits. *See id.* at 437. Similarly, Panetti had ample opportunity to present his evidence before he was found competent by the federal district court. *Compare Panetti*, 2008 WL 2338498, at *2 ("[T]he Court offered the parties the opportunity to present further evidence on the issue of whether and to what extent Panetti's delusions render him incapable of understanding the reason for his punishment. The evidence presented on this subject . . . was exhaustive."), *with Panetti*, 551 U.S. at 935 ("[W]e find the state court failed to provide the procedures to which petitioner was entitled under the Constitution; and we determine that the federal appellate court employed an improperly restrictive test when it considered petitioner's claim of incompetency on the merits.").

To the extent that *Green* and *Panetti* are applicable in the context of determining whether a defendant has made a "substantial showing" of incompetency, they support a "substantial showing" in this case. *See Green*, 374 S.W.3d at 444; *see also Panetti*, 551 U.S. at 959 (a prisoner is not automatically foreclosed from demonstrating incompetency once he can identify the stated reason for his execution; delusions may be relevant to the defendant's understanding of the real interests the State seeks to vindicate, as well as the State's announced reason for a punishment or the fact of an imminent execution, and awareness of the State's rationale for execution does not foreclose inquiry into whether defendant has a rational understanding of it); *Panetti*, 2008 WL at *32, 34 ("Most courts have used a sufficient contact with reality as the touchstone for ascertaining the existence of a rational understanding. . . . A defendant lacks the requisite rational understanding if

his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him.").

## VII. Conclusion

Appellant's competency motion, supplement, and attachments made a "substantial showing"of incompetency under Article 46.05(f) because they presented sufficient credible evidence that Appellant is incompetent to be executed. The trial court erred in weighing the credible evidence of Appellant's incompetency against credible evidence of his competency to determine that he had not made a "substantial showing" of incompetency.[9]

We hold that Appellant is entitled to further proceedings under Article 46.05. The current stay of execution shall remain in effect pending the outcome of competency proceedings in the trial court.

Hervey, J.

Delivered: October 30, 2013.

Publish

---

[9] The record reflects that the trial judge did not set out to apply a strict standard for a "substantial showing," although he ultimately did so after defense counsel repeatedly missed court-scheduled deadlines and informed him that they could not file anything until they had marshaled all available evidence. The trial court received argument and evidence from the parties at several hearings before the competency motion was filed. We observe that, on occasion, a party other than the defendant has filed a competency motion. *See, e.g.*, *Caldwell*, 58 S.W.3d at 128.