**Opinion issued May 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00551-CR

————————————

**LOX GORME, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1272297**

---

## MEMORANDUM OPINION

Appellant, Lox Gorme, without an agreed punishment recommendation from the State, pleaded guilty to the offense of murder.[1]  After a pre-sentence investigation ("PSI") hearing, the trial court assessed his punishment at

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2011).

confinement for forty-eight years. In his sole issue, appellant contends that the trial court erred in not conducting, sua sponte, an informal inquiry into his competency during the sentencing phase of trial.

We affirm.

## Background

A Harris County Grand Jury issued a true bill of indictment, accusing appellant of having committed the offense of murder on July 28, 2010. Appellant's counsel then moved for a psychiatric examination to determine appellant's competency to stand trial on the grounds that appellant had a "history of psychiatric problems" and his "behavior caused concerns about [his] ability to understand [the] process." And the trial court granted the motion.

Dr. R. Laval subsequently filed a forensic psychiatric evaluation report with the court. In his report, Laval states that he examined appellant on May 27, 2011 and found him to be calm and cooperative, with organized, coherent, and logical thought processes. Appellant reported a history of auditory hallucinations, namely, "voices that never stop" and tell him "things that are happening and sometimes good or bad things about [him]." Appellant told Laval that he had not been taking medication prior to his arrest, but had been "self-medicating with alcohol," which helped "suppress" the voices. Since his arrest, Laval had undergone three psychiatric assessments, been diagnosed with "Schizophrenia, Paranoid Type," and

been started on medication. In the latest assessment report, the examiner had found that appellant was "still experiencing auditory hallucinations 'about past events,' but not as much as before." And appellant told Laval that he was continuing to experience auditory hallucinations, despite his medication. However, noting that there was "no significant decline in his attention, concentration or memory function," Laval found that appellant was "cognitively intact and seemed not to be responding to internal stimuli." And he diagnosed appellant with "Psychotic Disorder Not Otherwise Specified and Alcohol Dependence."

Dr. Laval further determined that appellant had a "clear and rational understanding of the charges against him and of the possible consequences of conviction," "demonstrate[d] the ability to disclose to counsel pertinent facts, events and states of mind associated with the alleged offense," and exhibited a "sufficient understanding of the criminal justice system and of the adversarial nature of prosecution." Laval opined that appellant had "sufficient present ability to consult with [c]ounsel with a reasonable degree of rational understanding, and ha[d] the ability to understand, both rationally and factually, the pending charges and criminal proceedings against him." Laval further opined, thus, that appellant was competent to stand trial.

Appellant subsequently pleaded guilty to the offense. In the plea documents, appellant stated that he understood the allegations and had fully discussed the case with his attorney, and he represented that he was "mentally competent to stand trial." Appellant's attorney also signed the plea documents, representing that he had fully discussed the case with appellant and believed that he was "competent to stand trial." The trial court, in signing the plea documents, stated that it had ascertained that appellant appeared "mentally competent."

Following the plea hearing, a PSI report was prepared. The PSI report, which was admitted into evidence, states that in March and April 2011, appellant was diagnosed with "Axis 1 schizophrenia, paranoid type" and "major depression disorder with recurring psychotic features." The report also reflects that appellant had reported that since starting his medication on May 1, 2012, "he [was] feeling better and [did] not hear the voices," which he "attribute[d] . . . to the medication he [was] currently taking."

At the PSI hearing, appellant's counsel objected to the PSI report, insofar as it stated that appellant had reported that he was feeling better and was no longer hearing voices, because appellant had told him that, "in fact, he is still hearing voices." And appellant clarified, "It is just not as loud." The trial court stated that it would "take notice of that." And appellant's counsel did not request an informal inquiry into appellant's competency.

4

At the PSI hearing, Ruth Fernandez testified that at the time of the offense, appellant, who is her brother, was living with her, her husband, her ex-husband, Paul Johnson, who is the complainant, and her four children. On July 28, 2010, while Fernandez was in her bedroom with her seven-year-old daughter, appellant entered and confronted her about a note that she had left him, accusing him of having left the front door open at 5:00 a.m. Appellant was angry and approached her with his "right hand behind his back," and she thought he was going to "punch her." After appellant said, "I'm not a F-ing liar, you F-ing B," he ran from the room. She then "heard the gun go off," and she screamed and froze. Appellant then returned to the bedroom, "held the gun to [Fernandez's] head," and asked her if she "wanted some of it." While Fernandez's daughter was underneath a blanket, appellant began "waving [the firearm] around toward" her. After appellant "ran away," Fernandez ran out of the house with her daughter and called for emergency assistance. She then saw appellant walk out of the house "casually" with a backpack.

Fernandez's twelve-year-old daughter testified that on July 28, 2010, while she was in the dining room talking through a pass-through window with the complainant as he washed dishes in the kitchen, she heard appellant yelling at Fernandez. Appellant then appeared in the kitchen, said the complainant's name, and "shot him." She then ran into a bathroom and locked the door. When things

5

got quiet, she emerged from the bathroom and "started running upstairs" to her brother and sister. She encountered appellant at the top of the stairway, where he put a "gun to [her] head and said F-you." She then ran and hid behind a computer desk. After she saw appellant go downstairs, she hid in a closet with her brother and sister.

Appellant testified that he shot the complainant, "had no reason to do it," and was "very sorry for it." He noted that prior to the shooting, although he "wasn't in anguish or anything like that," he had been drinking for "about a week." And he was "really super, super angry . . . [a]bout them saying some things on a note," especially that his sister had "mentioned that [he had] left the door ajar on purpose." Although the complainant was not involved, appellant had entered the kitchen to "get an answer from him," and a "shot went off."

As he left the kitchen, appellant saw Fernandez and one of the kids run past him. However, he denied having spoken to them. He then "went into the bedroom to grab [his] two bags," which were already packed, went downstairs and left the house. Appellant boarded a bus to Ottawa, Canada, where he was later apprehended at an airport, carrying over $16,000 in cash and attempting to catch a flight to Singapore.

## Competency

In his sole issue, appellant argues that the trial erred in not conducting, sua sponte, an informal inquiry into his competency to "proceed with sentencing" because it was "aware of [his] mental health history, in addition to the current auditory hallucinations" from which he suffered. Appellant asserts that it is "self-evident that Axis I schizophrenia, paranoid type and major depressive disorder with recurring psychotic features is evidence of severe mental illness." And such diagnoses, along with Dr. Laval's finding that appellant had experienced auditory hallucinations, and defense counsel's statement that appellant was "in fact, still hearing voices," were "sufficient to show that an inquiry into competency was required."

We review a trial court's decision not to conduct an informal competency inquiry for an abuse of discretion. *See Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008); *George v. State*, 446 S.W.3d 490, 499 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). "'[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense, may not be subjected to trial.'" *Id*. at 688–89 (quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct.

896, 903 (1975)). Thus, a defendant is incompetent to stand trial if he does not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006).

A defendant is presumed competent to stand trial and shall be found competent unless proved incompetent by a preponderance of the evidence. *Id.* art. 46B.003(b). Upon a suggestion that a defendant may be incompetent, a trial court shall determine by "informal inquiry" whether there is "some evidence" from any source that would support a finding that the defendant may be incompetent to stand trial. *Id.* art. 46B.004(c) (Vernon Supp. 2014); *see Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013). Either party may suggest by motion, or a trial court may suggest on its own motion, that a defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a). A suggestion of incompetence "may consist solely of a representation from any credible source." *Id.* art. 46B.004(c-1). "A further evidentiary showing is not required to initiate the inquiry, and [a] court is not required to have a bona fide doubt about the competency of [a] defendant." *Id.* "Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described by Article 46B.024 or on any other indication that the defendant

is incompetent within the meaning of Article 46B.003." *Id*. The factors include whether the defendant can: "(A) rationally understand the charges against [him] and the potential consequences of the pending criminal proceedings; (B) disclose to counsel pertinent facts, events, and states of mind; (C) engage in a reasoned choice of legal strategies and options; (D) understand the adversarial nature of criminal proceedings; (E) exhibit appropriate courtroom behavior; and (F) testify." *Id*. art. 46B.024(1) (Vernon Supp. 2014).

Here, the record reveals that appellant suffered from mental illness. The fact that a defendant is mentally ill, however, does not by itself mean that he is incompetent to stand trial. *See Turner*, 422 S.W.3d at 691. The inquiry is whether a defendant's mental illness "operates in such a way as to prevent him from rationally understanding the proceedings against him or engaging rationally with counsel in the pursuit of his own best interests." *Id.* "Evidence that raises this possibility necessitates an informal inquiry . . . ." *Id.*

Dr. Laval found that appellant, notwithstanding his mental health issues, had a "clear and rational understanding of the charges against him and of the possible consequences of conviction," "demonstrate[d] the ability to disclose to counsel pertinent facts, events and states of mind associated with the alleged offense," and a "sufficient understanding of the criminal justice system and of the adversarial nature of prosecution." *See* TEX. CODE CRIM. PROC. ANN. art. 46B.024(1). He also

noted that appellant had demonstrated an ability to behave appropriately in court and could "communicate logically, coherently, and relevantly." *See id.* Although appellant "continue[d] to experience auditory hallucinations," he was "cognitively intact and seemed not to be responding to internal stimuli." Laval opined, thus, that appellant was competent to stand trial.

Nothing in the record suggests that appellant's mental status had materially changed after Dr. Laval's competency determination such that a sua sponte, informal competency inquiry was required. In the plea documents, appellant represented that he understood the allegations and was "mentally competent to stand trial." Appellant's attorney also signed the plea documents, representing that he had fully discussed the case with appellant and believed that he was "competent to stand trial." And the trial court had ascertained that appellant appeared "mentally competent." Further, appellant's testimony at the PSI hearing was articulate, logical, and reflected his understanding of the charges against him. *See Ryan v. State*, 937 S.W.2d 93, 106 (Tex. App.—Beaumont 1996, pet. ref'd) (concluding defendant's testimony "a good barometer" of competency). And he responded appropriately to questioning during the proceedings. There is no suggestion that appellant engaged in abnormal or bizarre behavior during the hearing. And appellant's attorney never complained that he could not effectively communicate with appellant. *See Bill v. State*, No. 01-12-00125-CR, 2012 WL

4857922, at *2 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (mem. op., not designated for publication).

A trial court's first-hand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004). Nothing in the record before us suggests that appellant lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against [him]." *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Hobbs v. State*, 359 S.W.3d 919, 925–26 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding trial court did not err in not conducting additional inquiry into defendant's competency before sentencing because neither defendant's history of mental illness nor fact he might have been on psychiatric medication sufficient to warrant competency inquiry absent evidence of present inability to communicate with attorney or understand proceedings); *Grider v. State*, 69 S.W.3d 681, 685 (Tex. App.—Texarkana 2002, no pet.) (holding evidence defendant schizophrenic, took medication, heard voices, and saw things insufficient to demonstrate inability to consult with lawyer or understand proceedings).

Accordingly, we hold that the trial court did not err in not conducting, sua sponte, an informal inquiry into appellant's competence during the punishment phase of trial. *See Luna*, 268 S.W.3d at 600; *George*, 446 S.W.3d at 499.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).