Laura Denvir Stith, Judge,
dissenting.

I. INTRODUCTION

Andre Cole petitions this Court under Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), and Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), claiming that he has made a threshold showing that his execution would violate the Eighth Amendment of the United States Constitution because he is insufficiently competent to have a rational understanding of why he is being executed. The majority agrees that, once such a threshold showing is made, Ford and Panetti entitle Mr. Cole to a hearing on the issue of whether he is competent to be executed. But the majority incorrectly determines that the hearing to which he is entitled need not be an evidentiary one or even be in the form of a hearing at all. Rather, the majority concludes it simply can take the evidence Mr. Cole presents to this Court to support his threshold showing and use that evidence to make credibility determinations as to whom to believe and whose reports are entitled to more weight in the first instance and then itself decide the ultimate factual issue of whether Mr. Cole is incompetent.
The majority opinion cites to no authority to support its conflation of the threshold showing and hearing stages of the Panetti analysis or for substituting this Court for a fact-finder on issues of credibility, and' there is none. While Panetti held that the hearing need not have the formality of a trial, it reaffirmed that a “fair hearing” must follow a threshold showing. The weight of authority of cases addressing *363 that issue interprets this as an evidentiary hearing. The majority does not cite any authority that states that an appellate court can consider the credibility of the threshold evidentiary showing and resolve factual disputes in lieu of having a hearing, as this Court now does. The majority is in error in all of these regards.
For these reasons, I dissent. Because Mr. Cole has made a threshold showing of incompetence, this Court should stay Mr. Cole’s execution and appoint a special master who can conduct what Ford describes as a “fair hearing” to determine whether Mr. Cole’s current mental capacity bars his execution.

II. ANALYSIS

In Ford and Panetti the United States Supreme Court set out the standard for granting a stay of execution in the face of a claim of incompetence. Such a claim does not second-guess the decision that the defendant was competent to be tried, nor does it attack his conviction. Panetti, 551 U.S. at 934, 127 S.Ct. 2842. Rather, it assumes the validity of his conviction and addresses only whether mental health, medical, and other factors occurring since the conviction have rendered him incompetent to be executed because, as the plurality in Ford explained, “the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.” Ford, 477 U.S. at 409-10, 106 S.Ct. 2595.
. Ford was a plurality decision. Panetti recognized that Justice Powell’s concurring opinion, being the narrowest one, is controlling. Panetti, 551 U.S. at 949, 127 S.Ct. 2842. In his concurring opinion in Ford, Justice Powell agrees that one cannot execute prisoners “who are unaware of the punishment they are about to suffer and why they are to suffer it.” Ford, 477 U.S. at 422, 106 S.Ct. 2595. Panetti clarified, however, that an understanding of “why they are to suffer” execution requires more than a showing that the defendant knows that the State wishes to execute him for a murder. Rather, it requires a rational understanding of why this is a proper punishment for his crime. As Pan-etti explained:
Whether Ford’s inquiry into competency is formulated as a question of the prisoner’s ability to “c'omprehen[d] the reasons” for his punishment or as a determination into whether he is “unaware of ... why [he is] to suffer it,” then, the approach taken by the Court of Appeals is inconsistent with Ford. The principles set forth in Ford are put at risk by a rule that deems delusions relevant only with respect. to the State’s announced reason for a punishment or the fact of an imminent execution, see [Panetti v. Dretke ] 448 F.3d [815] at 819, 821 [ (5th Cir.2006) ], as opposed to the real interests the State seeks to vindicate .... A prisoner’s awareness of the State’s rationale for an execution is not the same as a rational understanding of it. Ford does not foreclose inquiry into the latter.
Panetti, 551 U.S. at 959, 127 S.Ct. 2842.
How does a court determine whether the defendant has this kind of understanding? The majority opinion in the instant case says that it is not sure, for no exact standard is set by Ford or Panetti. But that does not mean these cases do not provide some guidance on this issue. Both are clear that there, is a two-part test— first, a court must determine whether a substantial threshold showing has been made of incompetence. Id. at 949, 127 S.Ct. 2842. And, as Panetti made clear, once that is done, then there must be a second procedural step, a “fair hearing” at which the prisoner can support his claim with further evidence:
*364 Once a prisoner seeking a stay of execution has made a “substantial threshold showing of insanity,” the protection afforded by procedural due process includes a “fair hearing” in accord with fundamental fairness. Ford, 477 U.S. at 426, 428, 106 S.Ct. 2595.... This protection means a prisoner must be accorded an “opportunity to be heard” ... though a “constitutionally acceptable procedure may be far less formal than a trial.”
Id. (emphasis added) (internal citations to Justice Powell’s Ford concurrence omitted).
The United States Supreme Court thereby requires that (1) there must be consideration of whether there is a threshold showing, and if so, that (2) there must be a fair hearing.
In Panetti, neither procedural requirement was properly met, for the state court failed to consider any submissions from the defendant. The state court considered only the state’s evidence in the form of psychiatric opinions that the defendant was competent. This failed to meet the most minimum requirements for due process, which Panetti said must include at least “the opportunity to make an adequate response to evidence solicited by the state court” and in a case involving experts, “an opportunity to submit psychiatric evidence as a counterweight to the report filed by the court-appointed experts.” Id. at 952, 127 S.Ct. 2842. Because the state court’s failure to consider any submissions from the defendant was clearly inadequate, Panetti said it did not need to go on and address “whether other procedures, such as the opportunity for discovery or for the cross-examination of witnesses, would in some cases be required under the Due Process Clause” because what was shown already violated due process. Id.
But the majority is mistaken in taking this to be an invitation to combine the “threshold showing” and “fair hearing” requirements where, as here, defense counsel also submit expert opinions in support of the request for a hearing. Respectfully, this is completely improper and unprecedented.
The evidence presented to date was submitted by Mr. Cole to meet his burden of making a threshold showing that he was entitled to a fair hearing at which he could provide his evidence. It was not intended to take the place of that hearing. In fact, that is exactly what occurred in the state court in Panetti itself, and the United States Supreme Court found that did not constitute an opportunity to make an adequate response to the state’s evidence. Id. at 948-54, 127 S.Ct. 2842.
While Panetti did say that the state court below had erred in not considering defense experts, it did not say that the defense had not presented expert opinions, for they had. Panetti specifically noted that the defense had presented evidence that consisted of “pointed observations made by two experts the day before petitioner’s scheduled execution” and “references to the extensive evidence of mental dysfunction considered in earlier legal proceedings,” id. at 950, 127 S.Ct. 2842 — in other words, precisely the type of evidence that Mr. Cole has submitted. Panetti did not merely say that the state court should have considered these opinions too in deciding the competency issue. To the contrary, Panetti said that the evidence presented was sufficient to require a “fair hearing.” Id. at 952, 127 S.Ct. 2842. And Panetti did not in any way suggest that a writ proceeding in the appellate court with no briefing or oral argument constitutes a “fair hearing.” In fact, to deny Mr. Panet-ti a hearing on this evidence, Panetti held, *365 was so improper that the Supreme Court did not even need to consider whether a hearing without cross-examination or discovery would meet due process requirements, for in the absence of a hearing, no more needed to be said. Id. Due process had already been violated.
Confusion about these required procedural protections seems to have been created by this Court’s merging of the concepts of the threshold showing with the actual competency hearing in this Court’s recent decisions in State ex rel. Middleton v. Russell, 435 S.W.3d 83 (Mo. banc 2014), and State ex rel. Clayton v. Griffith, 457 S.W.3d 735 (Mo. banc 2015). To the extent that Middleton and Clayton can be read to conflate these two requirements into a single determination by a non-fact-finding body such as this Court, they are incorrect.
■ For example, Middleton concluded that the petitioner failed to meet the substantial threshold showing of incompetency. Middleton did not, however, set out any sort of standard that must be met to satisfy that threshold requirement. Instead, Middleton compared Mr. Middleton’s initial submissions in support of a threshold showing to the Supreme Court’s discussion of the facts showing made by Mr. Panetti at his merits hearing and explained that, because Mr. Middleton’s delusions were different in kind to those in Panetti Mr. Middleton had not met the threshold requirement. Middleton, 435 S.W.3d at 85-86. The majority in Clayton made the same mistake and even took it a step further by concluding: “the Court finds that Clayton is competent to be executed” — despite the fact that Mr. Clayton was only attempting to meet the threshold showing for a fair hearing where his competency could be determined and despite the existence of competing expert testimony that should have called for a fair hearing at which competency could be determined. Clayton, 457 S.W.3d at 751.
This was wrong. The evidence considered for the purposes of that threshold determination does not provide a basis for a court to make a conclusive determination as to whether the petitioner actually is competent. That conclusive determination is for the separate hearing. And there was such a separate merit s hearing in the procedural history described in Pan-etti. After the state court denied Mr. Panetti a hearing, the federal district court granted him one. Panetti, 551 U.S. at 937-40, 127 S.Ct. 2842. At that hearing, the defense presented four experts who were subjected to cross-examination regarding Mr. Panetti’s delusions. Id. at 941-42, 127 S.Ct. 2842. The district court determined that Mr. Panetti had not shown incompetency. Id. at 942, 127 S.Ct. 2842. The court of appeals affirmed. Id. The United States Supreme Court reversed the court of appeals, finding that the court of appeals and the 'district court used too restrictive of a test when they considered Mr. Panetti’s claim of incompetence on the merits. Panetti’s analysis of the threshold showing described above was in response to the state court’s denial of a hearing to Mr. Panetti. Id. at 948-54, 127 S.Ct. 2842. Then Panetti’s description of the rational understanding test and the merits of Mr. Panetti’s competency claim was in response to the evidentiary hearing that took place in federal district court and examined by the federal appellate court. Id. at 954-62, 127 S.Ct. 2842. The Supreme Court did not blend the merits of Mr. Panetti’s competency analysis into the determination of whether Mr. Panetti had made a substantial threshold showing of incompetency.
In rejecting Mr. Cole’s argument that he presented a substantial threshold showing of incompetency such that he was entitled *366 to a hearing to determine his competency, the majority, like in Middleton and Clayton before it, improperly conflates these issues and determines that Mr. Cole is competent to be executed based on the threshold showing filings rather than on evidence presented at an evidentiary hearing. Indeed, the majority unintentionally exacerbates the Middleton/Clayton error by actually weighing the evidence offered by Mr. Cole and assessing its credibility in determining whether a threshold showing has been made.
Instead of weighing evidence and making credibility determinations, the question here is whether Mr. Cole has made a sufficient showing to trigger the need for a fair hearing. While, as the majority notes, Panetti did not specify exactly what test the state must apply to determine the threshold showing, by its nature the showing must be less than is required in an evidentiary hearing, for it provides merely the preliminary showing that an evidentia-ry hearing is required. Although courts have struggled to pin down the exact phrase properly to be used to describe this standard, courts are consistent that it is less than that required to show incompetency itself because the threshold requirement is simply the basis for holding a hearing on competency. That is, because the evidentiary hearing is a civil proceeding, it would require proof by a preponderance of the evidence. The standard sufficient for a substantial threshold showing of incapacity, therefore, must be something less.
This is the result reached in Thompson v. Bell, 580 F.3d 423, 436 (6th Cir.2009), in which the United States Court of Appeals for the Sixth Circuit held that an eviden-tiary hearing was warranted because the petitioner’s “evidence has at least created a genuine issue about his competency” (emphasis added). The Sixth Circuit explained that the “genuine issue” arose from the evidence he presented in his petition, such as medical reports, a documented history of delusions and psychosis, and the state’s prior efforts to appoint a conservator to make medical decisions on his behalf. Id. The court concluded that the submitted evidence “was undoubtedly a ‘substantial threshold showing,’ and therefore an evidentiary hearing should have been held.” Id.
Similarly, Druery v. State, 412 S.W.3d 523, 539 (Tex.Crim.App.2013), held that the petitioner made a substantial threshold showing of insanity and examined the interplay between the Panetti/Ford standard and the relevant Texas statute. There, the trial court held an “informal hearing” and made credibility determinations, as opposed to holding a formal hearing on the merits. Id. at 526. Under the Texas statute, a “substantial showing” required more than “some evidence” of incompetency, but less than establishing incompetency by a preponderance of the evidence. Id. at 541.
The court emphasized that, “[i]f resolution of the competency motion requires resolving disputed material facts and conflicting credible evidence on the question of the defendant’s incompetency, then the defendant has ‘made a substantial showing,’ and additional fact-finding and a hearing are required.” Id. at 537 (emphasis added). Druery found that the petitioner there presented sufficient evidence such that he was entitled to a competency hearing when he alleged that, “at least some of the time,” he did not believe that he committed the charged crime, meaning that he was not aware that he committed the offense for which he was convicted, and alleged that he did not think that he would be executed. Id. at 541-42. See also Timberlake v. State, 858 N.E.2d 625, 629 (Ind.2006) (requiring “a reasonable possibility that [the petitioner] is insane” to *367 meet the substantial threshold showing of insanity standard); State v. Irick, 320 S.W.3d 284, 294 (Tenn.2010) (explaining that the death penalty’s retributive functions are undercut “when the prisoner suffers from a form of mental illness that distorts his or her mental state to the point that the prisoner’s ‘awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole’” 0quoting Panetti, 551 U.S. at 958-59, 127 S.Ct. 2842)).
The majority opinion seeks to distinguish Thompson and Druery on the basis that each state has its own statute. But, of course, those respective state statutes must be consistent with Ford and Panetti. These courts are either applying Ford and Panetti and not the statute or interpreting the statute in light of the statute’s intent to apply Panetti. In fact, the United States Court of Appeals for Fifth Circuit in Green v. Thaler, 699 F.3d 404, 417, n. 10 (5th Cir.2012), noted that the Texas statute at issue in Druery codifies the Ford requirement. That is no different from the majority’s recognition that it must apply Missouri’s statute, section 552.060.1, consistently with Panetti.
Moreover, although there does not seem to be a uniform standard to determine when a petitioner has made a substantial threshold showing of incompetency, neither Ford nor Panetti, nor any of the cases cited from other jurisdictions, provides any sort pf authority for this Court to weigh the evidence offered by a petitioner and assess its credibility in determining whether the petitioner actually is incompetent. This Court normally does riot itself act as a fact-finding body, but rather, appoints a master even in a habeas proceeding. Indeed, in this case this Court does not even have the benefit of briefing or of oral argument. It is deciding factual and credibility issues solely on the basis of Mr. Cole’s -writ petition, suggestions in support, and supporting exhibits submitted on March 23, the State’s suggestions in opposition and supporting exhibits submitted on March 27, and Mr. Cole’s reply and supporting exhibits submitted on March 30.
While cross-examination and discovery might not' always be necessary, a right to respond at a hearing to the State’s evidence concededly is. A writ proceeding in an appellate court with no briefing or oral argument does not constitute a “fair hearing.”
And where, as here, the question is the meaning of and basis for an expert’s testimony and his qualifications, then discovery and cross-examination also are necessary. For instance, the majority opinion argues that forensic psychiatrist Dr. William Logan is not credible because his 2002 testimony was based on evidence presented only by the defense and an examination of Mr. Cole. The majority discounts Dr. Logan’s more recent report, despite the fact that it considers the evidence offered by both sides, and considers an examination of Mr. Cole in February 2015, because while the majority finds that he does not adequately understand the rationale for his execution, it does not state what he does understand. Of course, that is a matter that should be explored at an eviden-tiary hearing, but the request for that hearing is denied.
The majority similarly says that it believes that Mr. Cole’s rational discussion of his execution in certain telephone conversations shows that he is competent. But whether the ability to sometimes sound rational means one understands the nature and purpose of one’s execution is a matter that comes within the province of expert testimony — testimony that the State could *368 present at a hearing, but that this Court does not have the psychiatric skill to assess in the absence of such a hearing.
The majority concludes that Dr. Logan is not credible because he also testified for the defense in Middleton and Clayton. Finding experts willing to get .involved in death penalty litigation is exceedingly difficult, and it will be all the more so if experts must be “one and done” — if they can testify only in a single case before being discounted as just a defense shill. This is particularly true here where defense counsel indicate that Dr. Logan, in fact, testifies for both the prosecution and the defense — but if this is in question, then it could be explored in cross-examination at the hearing that the majority refuses to permit.
The majority recognizes that a person can be delusional and incompetent to be executed, but says that because Mr. Cole was not incompetent and did not show mental illness prior to the last few years, it is not credible that he suddenly became incompetent. That may be so, but it may not be so. That is a matter for expert testimony — testimony that could be presented at the hearing that will not be held.
These are precisely the reasons that a fair hearing is required, so that the preliminary record used to support a threshold showing is not the sole basis of the competency determination, but rather, the parties can flesh out and support their views, demonstrate weaknesses in the views of the other side, and come to an understanding of the ultimate issue — whether the petitioner is competent.
Mr. Cole has presented sufficient evidence to make a threshold showing of incompetence. Dr. Logan has provided two reports, dated March 12, 2015, and March 28, 2015, that find that Mr. Cole is “depressed with prominent symptoms of psychosis” and that he “laek[s] the capacity to understand the nature and purpose of the punishment about to be imposed upon him.” Dr. Logan reached this determination based on a recent 2.5 hour in-person examination, a 2002 mental health evaluation of Mr. Cole, information provided by Mr. Cole’s attorneys, and taking into consideration exhibits filed by the State including offender grievance forms, prison mental health records, and transcripts of telephone calls made by Mr. Cole. The State contends that Dr. Logan’s findings are not credible because the post-conviction motion court was not persuaded by his 2002 testimony on grounds that it was informed only by information from Mr. Cole’s attorneys. The State’s suggestion that his present evaluation is similarly biased is flatly refuted by Dr. Logan’s March 28 report, in which he makes clear that he has considered the State’s evidence in reaching his conclusions, as well as the additional evidence provided by his February 20, 2015, in person examination of Mr. Cole. Further, Dr. Logan has testified as an expert on the side of the prosecution as well as the defense, rather than being solely a defense expert.
During his February 20, 2015, examination, Mr. Cole reported to Dr. Logan that, in addition to experiencing feelings of depression, he is disturbed by “voices of individuals unfamiliar to him,” which are alternately threatening or helpful, which sometimes speak to him through the television and intercom, and which prevent him from sleeping. Mr. Cole’s current and former attorneys attest that his mental health has deteriorated significantly over the course of their representation. More recently, they have observed increasingly agitated and paranoid behavior *369 from their client, and he has reported hearing voices to them as well. Attorney Carol Camp attests that during a February 7, 2015, meeting at which she attempted to update Mr. Cole about his case, “it became apparent that he did not grasp the significance of those developments or how they might affect his case. Andre went on at length about the voices he hears and his resulting troubles sleeping at night.”
Contrary to the State’s assertion that Mr. Cole only reported the voices after a show cause order was issued in his case, his former counsel, Jessica Sutton, described the following behavior at their October 4, 2014, meeting, several weeks prior to the issuance of the show cause order: “Mr. Cole was in a highly agitated state during the meeting ... [he] discussed the whispers that he was hearing. Mr. Cole’s speech was at times unintelligible, in that he was mumbling in a quiet whisper to prevent ‘them’ from hearing us, despite the fact that we were in an unsupervised attorney visit.” Ms. Sutton’s colleague, Rebecca Woodman, attests that Ms. Sutton told her on October 4 “about Andre hearing voices during her visit with him.”
Dr. Logan reports that the State’s other evidence of “malingering” — the fact that Mr. Cole filed grievances, reported no issues to prison mental health providers, and carried on several brief telephone conversations — is not inconsistent with his finding of psychosis, is not supported by expert testimony, and is not scientific in nature.
The grievances filed by Mr. Cole in 2007 and 2008 do not provide evidence as to his current mental health condition, the only relevant inquiry in a Ford/Panetti claim. The more recent grievances concerning the State’s changing execution protocol were drafted by his attorneys.
Likewise, prison mental health records from 2001 are irrelevant to a determination of Mr. Cole’s current mental health. The State’s reliance on a Dr. Whitehead’s March 24, 2015, observation that Mr. Cole denied hearing voices is, Dr. Logan asserts, misplaced given that the wellness check lasted only a matter of minutes, took place through the cell door, and was not conducted by a person of trust, and that acknowledging the voices would have invited unwanted treatment.
Certainly, the State also presented strong contrary evidence, detailed by the majority opinion. And, were a fair hearing held, both the defense and the State might well present additional evidence that would support their respective positions, evidence as to which this Court can only guess at this point. My point is not that I believe Mr. Cole’s evidence over that of the State, but that this is not a determination that I or my colleagues should make in the absence of a reference of this issue to a master for an evidentiary hearing. Whether the fact-finder at a fair hearing would find for one party or the other I do not presume to know. Neither should the majority. I would hold only that a threshold showing has been made and that this Court should refer this matter to a master for a fair hearing at which evidence may be presented.