# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-70016

DERRICK DEWAYNE CHARLES,

> Petitioner – Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent – Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2015

Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-00592

---

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:*

This capital case requires us to determine whether we must stay Petitioner's execution, currently scheduled for May 12, 2015, to give effect to his right "meaningfully to research and present [his] habeas claims." Because the district court did not abuse its discretion in determining that a mental

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-70016

health evaluation is not reasonably necessary to develop Petitioner's underlying habeas claim, we AFFIRM.

## I.

Petitioner, Derrick Dewayne Charles, was convicted and sentenced to death by a jury in 2003 after pleading guilty to murdering his fifteen-year-old girlfriend, her mother, and her grandfather during the same criminal transaction.[1] On direct appeal, Charles challenged his sentence on the ground that the trial court improperly admitted victim character evidence, including evidence of his girlfriend's hobbies and her grandfather's history of military service. *Charles v. State*, AP-74694, 2005 WL 283598, at *1 (Tex. Crim. App. Feb. 2, 2005). He also challenged Texas's capital-murder scheme as unconstitutional and his guilty plea as statutorily barred because of infirmities in the procedure used at the sentencing hearing. *Id.* at *2. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Id.* at *4. It held that the state trial court did not abuse its discretion in allowing the character evidence because the evidence provided only a brief glimpse into the victims' backgrounds. *Id.* at *2. The Texas Court of Criminal Appeals further held that Charles's constitutional challenge to Texas's capital-murder scheme was foreclosed by precedent, and that he was estopped from challenging the sentencing hearing procedure because, as evidenced by the trial transcript, the trial court followed the procedure that Charles had requested. *Id.* at *2–4.

While his direct appeal was pending, Charles filed a state habeas application. The state habeas court held an evidentiary hearing and entered

---

[1] The facts of Charles's crime are recounted in the Texas Court of Criminal Appeals' opinion on direct appeal as well as in our habeas opinion. *Charles v. State*, No. AP-74694, 2005 WL 283598, at *1 & n.1 (Tex. Crim. App. Feb. 2, 2005); *Charles v. Stephens*, 736 F.3d 380, 383–84 (2013). We need not recite them again here.

No. 15-70016

findings of fact and conclusions of law recommending that relief be denied. *Ex parte Charles*, WR-67171-01, 2008 WL 556015, at \*1 (Tex. Crim. App. Feb. 27, 2008). The Texas Court of Criminal Appeals summarily affirmed. *Id.*

In February 2009, Charles filed a federal petition in the Southern District of Texas alleging ineffective assistance of trial counsel on the basis of his counsel's purported failure to present mitigating evidence. Applying the deference required by the Antiterrorism and Effective Death Penalty Act, the district court denied relief.[2] *Charles v. Thaler*, 4:09-CV-0592, 2011 WL 5040438, at \*1 (S.D. Tex. Oct. 24, 2011), *aff'd sub nom*, *Charles v. Stephens*, 736 F.3d 380 (5th Cir. 2013).

On appeal, we affirmed the district court's judgment. *Charles v. Stephens*, 736 F.3d 380, 396 (5th Cir. 2013). Examining applicable Supreme Court precedent, we explained that "the state habeas court did not unreasonably apply *Strickland*'s deficiency prong by concluding that Charles's trial counsel performed an adequate mitigation investigation." *Id.* at 390.

---

[2] In its opinion, the district court recounted in detail Charles's attorneys' investigation into, and presentation of, mitigating evidence. *Charles v. Thaler*, No. 4:09-CV-0592, 2011 WL 5040438, at \*4–8 (S.D. Tex. Oct. 24, 2011), *aff'd sub nom*, *Charles v. Stephens*, 736 F.3d 380 (5th Cir. 2013). The district court denied relief, mostly on the ground that Charles's trial counsel conducted a thorough investigation and made a reasonable, strategic decision not to introduce mitigating evidence. The district court noted that trial counsel failed to uncover and present hospital records containing Charles's mental health history. *Id.* at \*18. However, the district court found that Charles's trial counsel's decision not to investigate the records was itself reasonable under the relevant Supreme Court precedent. *Charles v. Thaler*, 2011 WL 5040438 at \*21–22 (citing *Rompilla v. Beard*, 545 U.S. 374 (2003); *Wiggins v. Smith*, 539 U.S. 510 (2003)). As the district court explained, trial counsel "had little reason to think that the Gulf Pines Hospital records might benefit the defense." *Charles v. Thaler*, 2011 WL 5040438 at \*21. Although "[t]he defense was told by [Charles'] family that [he] had been placed in a hospital for 'acting out' . . . [Charles'] family assured the defense it was nothing more than that, as did [Charles]." *Id.* (all but first alteration in original). Charles later filed a motion to alter or amend the judgment, which the district court denied. *Charles v. Thaler*, 4:09-CV-0592, 2012 WL 1327782, \*3 (S.D. Tex. Apr. 17, 2012).

No. 15-70016

Charles petitioned for rehearing en banc, which we denied, *see* Order on Pet. Reh'g En Banc, No. 12-70016, Doc. 74 (5th Cir. Jan. 8, 2014), and the Supreme Court denied Charles's petition for a writ of certiorari. *Charles v. Stephens*, 135 S. Ct. 52 (2014).

On November 10, 2014, the state trial court filed its execution order setting the execution date for May 12, 2015. On March 13, 2015, Charles filed motions to withdraw or modify the execution order, for appointment of counsel, and for funding for a mental health evaluation. After a hearing, the state court denied the motions on April 9, 2015. Charles did not appeal these denials to the Texas Court of Criminal Appeals, but instead filed three motions in the federal district court on April 17, 2015, twenty-five days before his scheduled execution.

Charles did not file a habeas application in the district court. He filed motions for authorization to hire a mental health expert, for appointment of counsel,[3] and for stay of execution, all pursuant to 18 U.S.C. § 3599. In filing these motions, Charles sought time to "investigate, prepare, and present a claim that he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007)."

Charles argued that he can "make a colorable showing" under *Ford v. Wainwright*, 477 U.S. 399 (1986), "that he is not competent to be executed."

---

[3] The district court granted Charles's motion to appoint counsel and this decision is not at issue on appeal. Appointed counsel are Paul E. Mansura and Burke M. Butler, both of whom Charles requested in his motion for assistance of counsel. In its order, the district court noted that Mansur and Butler had already been appointed, but "nevertheless" appointed them again to represent Charles "throughout every subsequent stage of available judicial proceedings." *See* 18 U.S.C. § 3599(e). Butler was appointed on March 2, 2015 to substitute the previous second-chair counsel and Mansura was originally appointed on April 4, 2012. Both appointments precede the filing of Charles's motion for appointment of counsel.

No. 15-70016

Citing several volumes of supporting evidence, Charles contended that he has "suffered from severe and debilitating mental illness since childhood" as a result of genetic inheritance and the environment in which he was raised. He offered thirty-one exhibits, including the Gulf Pines Hospital records and several affidavits from doctors, attorneys, and family members. Of these exhibits, only two referred to information gathered after 2009.[4] In addition, he argued that 28 U.S.C. § 2244(B) would not bar his *Ford* claim as a successive petition because, according to *Panetti*, 551 U.S. at 943, his *Ford* claim was not ripe until the state trial court set his execution date.

The state filed its response to Charles's motions on April 24, 2015. In its response, the state argued that Charles's motions did not present a cognizable claim under § 2254, and to the extent they did, such a claim was unexhausted and procedurally barred. The state further argued that any underlying incompetency claim was ultimately meritless. Charles filed his reply on April 29, 2015, clarifying that he was not yet filing a habeas claim, only motions seeking authorization to develop his habeas claim, pursuant to his rights under 18 U.S.C. § 3599.

On May 4, 2015, the district court filed its Memorandum and Order denying Charles's motions for authorization to hire a mental health expert and for a stay of the execution. Acting *sua sponte*, the district court also denied a

---

[4] Two affidavits, one signed by Steve Hare and the other by James William Marcus, refer to interviews the affiants had with Charles in 2013 and 2012, respectively. A third was completed in March 2015 but it refers to interviews conducted between 2003 and 2005. Similarly, a fourth affidavit signed in March 2015 includes Dr. Hays's analysis of reports that included facts gathered in 2006. The remaining exhibits include evidence that was already submitted to the state trial court or the state or federal habeas court

certificate of appealability (COA).[5]  The district court carefully identified what was not at issue.  Specifically, the district court explained that Charles's motions did "not directly seek federal habeas relief from his conviction and sentence"; did "not challenge the reasonableness of any state-court determination about his competency to be executed";[6] did "not seek relief from constitutional infirmities in the state process for obtaining experts or investigators to evaluate possible psychological claims"; and did "not seek leave to litigate a successive federal habeas petition based on *Ford*."

What Charles did request was a stay of his execution so that he could exercise his right under 18 U.S.C. § 3599 "to meaningfully research and present [his] habeas claims." *See McFarland v. Scott*, 512 U.S. 849, 858 (1994). As the district court noted, "Charles'[s] theory is novel and limited."  His *Ford* claim was never actually before the state or district court.  "Charles []made it clear that he seeks rulings only on whether he is entitled to a stay of execution and the allocation of funds to develop a *Ford* claim."  In Charles's words, the issue presented is "whether Mr. Charles' *Ford* showing is sufficient to trigger counsel and resources under § 3599, and a stay of execution to permit him an opportunity to present his *Ford* claim."  He admitted that the merits of his *Ford* claim are relevant only to the extent that "the existing record is so devoid of evidence that it does not even constitute a colorable *Ford* claim."

---

[5] As explained *infra*, a prisoner need not obtain a COA before appealing the denial of his § 3599 motion.  Therefore, this ruling by the district court is not at issue.

[6] Indeed, the state court never ruled on the merits of Charles's underlying *Ford* claim because it was merely asked to consider whether he made a showing sufficient to warrant a stay and authorization to hire a mental health expert.

No. 15-70016

In denying Charles's motion for stay, the district court applied the factors we typically consider for granting a stay,[7] and it determined that Charles failed to show a substantial likelihood of success on the merits of his underlying *Ford* claim.  The district court also indicated that even if it applied the "colorable showing" standard, the stay would not be warranted.  As for the § 3599(f) motion for authorization to hire a mental health expert, the district court determined that "[n]othing in the record before the Court has hinted that additional exploration of the *Ford* inquiry would result in a viable, or even colorable, *Ford* claim."

## II.

We have jurisdiction to consider Charles's motions.  A district court's denial of a motion under 18 U.S.C. § 3599(f)[8] is an appealable order, and "such an order . . . is not subject to the COA requirement."  *Harbison v. Bell*, 556 U.S. 180, 183 (2009); *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005) ("[A] COA is not necessary to appeal the denial of funds for expert assistance.").  The Supreme Court has held that the § 3599 right to expert assistance, like the right to counsel, "adheres prior to the filing of a formal, legally sufficient

---

[7] Normally we consider four factors in deciding whether to grant a stay:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009); *see also Planned Parenthood v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).  A stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted).

[8] *McFarland* and other cases refer to a different statute.  This is because the applicable statute was formerly codified at 21 U.S.C. §§ 848(q)(4)–(10), then recodified in 2006, without change, to create the current 18 U.S.C. § 3599.

habeas corpus petition," so the § 3599 motion itself commences a habeas proceeding and triggers federal jurisdiction. *McFarland*, 512 U.S. at 855–58 (addressing initial habeas filings); *In re Hearn*, 376 F.3d 447, 452 (5th Cir. 2004) (extending *McFarland* to § 3599 motions related to successive habeas claims). Likewise, "once a capital defendant invokes his [§ 3599 right], a federal court also has jurisdiction under § 2251 to enter a stay of execution" to make the defendant's § 3599 right effective. *McFarland*, 512 U.S. at 858.[9]

We review a district court's denial of a § 3599(f) motion for abuse of discretion. *Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir. 2014); *see also* 18 U.S.C. § 3599(f) (stating that a district court "*may* authorize the defendant's attorneys to obtain such services") (emphasis added). Likewise, "the decision to grant [or deny] a stay . . . is generally left to the sound discretion of district courts." *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013).

Charles' motion for authorization to hire a mental health expert hinges on whether he can show that the district court abused its discretion by determining that a mental health expert is not "reasonably necessary" to develop his *Ford* claim. *See* 18 U.S.C. § 3599(f) (permitting authorization of expert assistance "upon a finding that . . . [it is] reasonably necessary for the representation of the defendant"). We have "interpreted 'reasonably necessary' [in § 3599(f)] to mean that a prisoner must show that he has 'a substantial need' for the requested assistance." *Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir. 2014) (quoting *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004)). Under this standard, we have upheld district court decisions denying assistance

---

[9] "[A] court that would have jurisdiction to entertain a habeas corpus application" regarding a particular prisoner's death sentence may stay execution of that sentence upon the prisoner's application for § 3599 representation or expert assistance. 28 U.S.C. § 2251.

No. 15-70016

where such assistance will be in support of a claim that is procedurally barred[10] or "meritless," or where the assistance would generate only supplementary evidence. *Brown*, 762 F.3d at 459.

Charles argues that to satisfy the "reasonably necessary" standard he need only show that he has a "colorable" *Ford* claim. He borrows this standard from *Hearn*,[11] in which we reviewed whether a prisoner seeking to investigate a potential *Atkins* claim had made a showing sufficient for purposes of a § 3599 motion. 376 F.3d at 455 (holding that a § 3599 motion "need only be supported by a *colorable* showing of mental retardation") (emphasis added), *decision clarified on denial of reh'g*, 389 F.3d 122 (5th Cir. 2004). However, Charles admits in his brief that on rehearing we limited *Hearn*, including its colorable showing standard, to only those cases in which a prisoner has a potential claim based specifically on *Atkins*. 389 F.3d 123. Nevertheless, he argues that we should now adopt the colorable showing standard in the context of *Ford* claims.

Normally, *Ford* claims raised in a habeas application require a "substantial" showing in order to gain additional process for presenting evidence of incompetency. *Panetti*, 551 U.S. at 949. Texas offers a similar procedural mechanism under which a prisoner must make a threshold showing that raises a "substantial doubt" regarding his competency to be executed. Tex.

---

[10] The state argues in its brief that any *Ford* claim Charles may have is procedurally barred because he has not yet exhausted the claim state court. The district court did not address this issue and instead ruled on Charles's § 3599 motion without regard to the procedural posture of his underlying *Ford* claim. Because we agree with the district court that Charles's motions should be denied regardless of a potential procedural bar, we need not address whether the availability of a § 3599 motion is affected by the unexhausted status of a *Ford* claim upon which it relies.

[11] Justice O'Connor also used this language in her concurrence in *McFarland*. 512 U.S. at 860–61 ("[O]ur cases have made it clear that capital defendants must raise at least some *colorable* federal claim before a stay of execution may be entered.") (emphasis added).

No. 15-70016

Code Crim. P. art. 46.05(d); *see also Druery v. State*, 412 S.W.3d 523, 540 (Tex. Crim. App. 2013) (holding that state law initially requires a substantial showing to trigger more process). If a prisoner satisfies this requirement, the trial court must hold a hearing to determine a petitioner's competency by a preponderance of the evidence. *Id.* art. 46.05(k).

Charles never filed an art. 46.05 motion in state court, or a habeas application in federal court, as to his *Ford* claim. Instead, Charles filed motions for appointment of counsel and for expert and investigative assistance in both courts, and both courts denied the motions.[12] It is unnecessary for us to decide the issue of whether the proper test is a "colorable showing" or a "substantial showing"—neither is satisfied here. The district court determined that Charles had not made a colorable or substantial showing, and the district court's decision was not an abuse of discretion.

"The Supreme Court has declined to set forth a specific standard for determining" incompetency. *Eldridge v. Stephens*, No. 13-70023, 2015 WL 1454459, at *3 (5th Cir. Jan. 16, 2015). Generally, a prisoner is incompetent if he does not (1) "know the fact of [his] impending execution," *Ford*, 477 U.S. at 422 (Powell, J., concurring in part and concurring in the judgment),[13] or does not (2) "ha[ve] a rational understanding of the reason for the execution," *Panetti*, 551 U.S. at 958. "Rational understanding" requires more than mere awareness of the facts about the execution. *Panetti*, 551 U.S. at 958. The

---

[12] Charles filed a petition for a writ of certiorari in the United States Supreme Court seeking review of the state-court decisions. The petition is currently pending. *See Charles v. Texas*, No. 14-9605 (U.S. 2015).

[13] Justice Powell's opinion controls because it represented the narrowest holding of the Court. *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007).

prisoner must *understand* the *reasons* for his execution. *Id.* However, federal law distinguishes between an inmate who is mentally ill and one who is insane. *ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007). If a prisoner "has a rational understanding of his crime, his impending death, and the causal relationship between the two," then he is competent. *Eldridge*, 2015 WL 1454459, at *3.

As the district court carefully documented, Charles essentially relies on the very same evidence he marshalled in his initial state and federal habeas proceedings. The evidence includes his childhood hospital records; psychiatric records from the Texas Youth Commission; evidence of his turbulent home life; prior arrests and incarcerations; evidence of drug use; expert evaluations;[14] and the trial transcript (in which Charles affirmed his understanding of the charges and denied having any delusions). Based on these records, he argues that he "has an extensive and well-documented history of mental illness, including episodes of psychosis, and significant mental impairment that profoundly affects his functioning, even to the present day." However, even assuming he has some form of mental illness, none of this evidence shows that he does not know about his execution or that he does not rationally understand the reason for it. *See Martinez*, 2009 WL 211489, at *1 ("[C]ounsel . . . was able to develop an extensive history of mental health that still falls short of any threshold showing of incompetency to be executed.").

Moreover, the district court found that in 2005 and 2006, two experts evaluated Charles and determined that he was not mentally retarded or

---

[14] Without the aid of Charles's hospital records, one expert, Dr. Brown, concluded that there was no "evidence of mental illness or other types of mental disorder or mental defect." After having seen the hospital records, Dr. Brown expressed that they would have warranted further evaluations, but he expressed uncertainty about whether any "organic brain damage" would cause significant behavioral issues.

incompetent. They reported that he did not experience "active psychosis," his hallucinations occurred over a short period of time, his negative behavior and low cognitive scores were consistent with his ADHD, he denied experiencing "symptoms that are compatible with a psychotic disorder," and he was "lucid in his conversation and thought processes." While there was evidence of some depression, low intelligence, and possible brain injury, the two experts "did not diagnose him with any mental illness." "Nothing in the record . . . indicates that Charles suffers from symptoms of 'insanity' as described by *Ford*." There was no evidence of "pervasive and severely debilitating conditions . . . that traditionally give rise to *Ford* claims."

Much of the new evidence that Charles submitted with his § 3599 motion includes recent affidavits, mostly from his attorneys, but also one from a physician.[15] The attorneys' affidavits claim that Charles's "affect was always very flat"; "he was completely unengaged with the legal discussion relating to his case"; he "expressed little understanding of the proceedings"; he exhibited "strange physical tics"; he was "uncomfortable making conversation"; he was "emotionless"; and he "struggled to understand the simplest of topics." The physician stated in his affidavit that Charles "could be incompetent to be executed," but this physician never met with Charles and only partially reviewed the record. None of these affiants asserted that Charles was unaware he was being executed or that he did not rationally understand why he was

---

[15] Other than a few affidavits sworn to in March 2015, the rest of Charles's evidence has existed for several years and been presented at various stages in the history of his case. These recent affidavits are from Steve Hare, a Texas Defender Service intern, James William Marcus, a professor and attorney, Robert S. Wicoff, Charles's habeas counsel from 2003–2005, and Dr. Hays, a psychologist and attorney who did not interview Charles, but reviewed his medical reports. Despite Charles's assertion otherwise, some of these affidavits say very little about Charles's current mental state—Marcus's affidavit refers to an interview from 2012 (at the latest), and Wicoff's to interviews between 2003 and 2005.

being executed. The state court aptly noted that "nothing like that exists []because . . . it would be unethical for [the affiants] to give such an affidavit because it [probably] wouldn't be true." "Most of this has been investigated and investigated and investigated for years," and yet none of the affiants have been able to state that Charles did not know he was being executed or that he did not understand why.[16]

As the district court explained, the record "simply does not contain any evidence in support [of] Charles'[s] allegations." While a "colorable," or even a "substantial," showing may require little, it at least requires some competent evidence showing that a prisoner fails one or both of the elements for competency. Challenges lacking such evidence are precisely the kind of "[l]ast-minute filings that are frivolous[,] designed to delay executions[, and] can be dismissed in the regular course." *Panetti*, 551 U.S. at 946. Based on our review of the record in this case, the district court did not abuse its discretion in denying Charles's § 3599(f) motion. "Charles's long term mental health history, and the more recent observations by two affiants, does not justify a competency evaluation."

Likewise, the district court did not abuse its discretion in denying his motion for stay of execution. It is not clear whether Charles' motion for stay is governed by *McFarland* or by the *Nken* factors. Under *McFarland*, if a prisoner succeeds on his § 3599 motion but has insufficient time to

---

[16] The state argues that the state court's denial of Charles's motions for stay and expert assistance warrant our application of AEDPA deference to the analogous motions he filed in federal court. The district court reviewed Charles's federal motions de novo and still denied relief. Because we agree with the district court that the motions fail even on de novo review we need not decide whether AEDPA deference should apply to a state court's resolution of motions like those at issue here.

meaningfully exercise that right because of an impending execution, the Supreme Court has instructed federal courts to grant a stay. *See* 512 U.S. at 858 ("[A]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.") (internal quotation marks omitted). Of course, "if a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution." *McFarland v. Scott*, 512 U.S. 849, 860–61 (1994). Under the *Nken* factors, the movant must make a strong showing that he is likely to succeed on the merits of his underlying claim—in this case, Charles's *Ford* claim.

As already explained, Charles cannot make the requisite showing under his § 3599 motion. Neither can he make a strong showing that he is likely to succeed on his *Ford* claim. *See Nken*, 556 U.S. at 425–26. Therefore, regardless of which standard we apply, Charles's is not entitled to relief on his motion for stay.

**III.**

Accordingly, we AFFIRM.