PATRICK E. HIGGINBOTHAM, Circuit Judge:
Our question today is competency to be executed and its attending procedures, not the validity of the conviction or sentence. We stayed execution to consider. Scott Panetti’s appeal from the denial of appointed counsel and funding to hire a mental health expert and investigator. We will now reverse the district court’s denial of appointed counsel and expert funding under 18 U.S.C. § 3599, vacate its factual findings relating to Panetti’s competency, and remand for additional proceedings, another chapter in this judicial plunge into the dark fprest of insanity and death directed by the flickering and inevitably elusive guides.
I
Charged with capital murdér for killing his wife’s parents in front of his wife and three-year-old daughter, Panetti insisted on representing himself at’trial, an undertaking made the more difficult by a long history of schizophrenia and institutionalization, The Texas Court of Criminal Appeals (“TCCA”) upheld his conviction and death sentence on direct and collateral review.[1]
Panetti filed his first federal habeas petition in 1999, claiming, among other things, that he was incompetent both to waive counsel and-to stand trial. The district court rejected those incompetency claims, and the state trial court set Panetti’s execution date for February 5, 2004.[2] In December 2003, Panetti filed a motion in state court under Article 46.05 of the Texas Code of Criminal Procedure, claiming for the first time he was incompetent to be executed.[3] The state court denied the motion without a hearing, and the TCCA dismissed his appeal for lack of jurisdiction.[4]
*369 In January of 2004, Panetti filed 'a second federal habeas petition, his first under Ford v. Wainwright.[5] The federal district court granted his request for a stay to allow the state court to consider supplemental evidence.[6] The state court hired two experts to evaluate Panetti, but: upon receipt of their reports, denied relief without an evidentiary hearing,[7] Finding that the state court’s failure to afford Panetti a hearing denied due process under Ford, the federal district court scheduled an evi-dentiary hearing to determine Panetti’s competency to be executed, appointed counsel, and authorized funds for investigative and expert assistance.[8] Ultimately, the district court concluded that Panetti understood the reason for his execution and found him competent to be executed.[9] We affirmed.[10]
The Supreme Court granted certiorari and reversed.[11] The Court reasoned that “a prisoner’s recognition of the severity of the offense and the objective of community vindication are called into question ... if the prisoner’s mental state is so distorted by a mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole.”[12] The Court held that the test this court deployed—a prisoner’s factual awareness of his impending execution and the State’s articulated premises for executing him—did not go far enough; that a prisoner must also have a “rational understanding” of the State’s reasons for executing him.[13] The Court remanded the case to the district court to investigate and determine whether Panetti’s delusions rendered him incapable of understanding the reason for his punishment in light of its opinion and agáinst the backdrop of Roper v. Simmons,[14] Atkins v. Virginia,[15] and Ford.[16]
So, the federal district court held a second evidentiary hearing on the issue of Panetti’s competency to be executed. The court thoroughly reviewed the evidence presented at. the hearing and concluded that he was competent under the correct standard,[17] While. Panetti’s, resulting appeal to this court was pending,, the Supreme Court held in Indiana v. Edwards that “the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial ... but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by *370 themselves.”[18] In turn, we granted Panetti’s motion to stay federal proceedings for his return to Texas state court with his new Edwards claim.
Panetti then filed another state habeas petition, which the TCCA dismissed on October 21, 2009, as a subsequent application for “failing] to meet the dictates of Article 11.071, § 5.”[19] The next day, with our permission, Panetti filed his third federal habeas petition in the district court.[20]
While that petition was pending, the TCCA addressed the meaning of Edwards in Chadwick v. State.[21] In light of Chadwick, the federal district court granted Panetti leave to file a second successive state habeas petition.[22] The TCCA again dismissed the petition, and the Supreme Court denied certiorari.[23] Panetti then returned to the federal district court with his Edwards claim, which the court denied on the merits.[24] On August 21, 2013, this court affirmed both the district court’s 2008 rejection of Panetti’s competency-to-be-executed claim and its 2012 rejection of Panetti’s Edwards claim.[25] The Supreme Court denied Panetti’s resulting petition for a writ of certiorari.[26]
II
We come to Panetti’s present claim. Acting on an ex parte request from the state district attorney’s office, the state court set Panetti’s execution for December 3, 2014. Panetti’s counsel learned of the execution date from a newspaper on October 30, and the next day filed an emergéncy motion for a hearing, asking that the execution date be withdrawn or modified to allow time to pursue the issue of his competency to be executed through an Article 46.05 motion [27] In this motion, Panetti argued that in the short time remaining before his execution date, he would not have “a meaningful opportunity to contest his competency for execution” as required by due process and Ford. In Texas in 2014, no notice was required to be provided to capital defendants or their counsel when the execution was set, and dates of execution for “subsequent” executions could be set as early as thirty-one days out from the order scheduling the execution.[28]
*371 Panetti also submitted related motions for counsel and funding for expert assistance, captioned “Defendant’s Ex Parte Motion for Funds to Hire Mental Health Expert to Assist Defense in Article 46.05 Proceedings,” “Defendant’s Ex Parte Motion for Funds to Hire Investigator to Assist Defense in Article 46.05 Proceedings,” and “Defendant’s Motion for Appointment of Counsel to Prepare and Litigate Article 46.05 Motion.” He argued that the State “must comport with the minimum due process guarantees enumerated in Ford” by granting him compensated counsel, funding for experts, and time to develop an Article 46.05 petition; that with these resources, he would be able to make the substantial showing of incompetence required by Article 46.05 for a hearing on his competency. The motions included the names of experts Panetti’s pro bono counsel had already contacted, describing their qualifications and anticipated expenses. In the meantime, the State began gathering evidence in support of its opposition to Panetti’s pleas. This included surreptitiously recording a conversation between Panetti and his parents on November 4, as it had done seven years before, generating evidence of the same type relied upon by the federal district court in denying Panetti’s earlier Ford claim.
On November 6, the state trial court held a hearing by phone with both parties. During this teleconference, Panetti’s counsel reminded the court that Panetti had only six days to file or he would lose any right to appeal from the judgment of the state court;[29] that Panetti’s competency had not been evaluated for seven years; and that the state trial court was placing his unpaid counsel in the position of either attempting to review 8,500 pages of TDCJ medical records, seek pro bono expert assistance, and prepare and file a petition in less than one week’s time, or else lose all right to appellate review. The court suggested, and the State agreed, that Panetti file a skeletal Article 46.05 petition, followed by an amended motion expanding on the original petition, provided any additional filings were submitted by November 21, effectively granting an additional nine days. Panetti’s counsel replied that fifteen days were not enough for a law professor from Wisconsin and an expert, both without funding and with the large demands of their primary work, to prepare sufficient filings.
Later that day, the court denied Panet-ti’s emergency motion for a hearing. On November 14, Panetti filed a “Renewed Motion to Stay or Modify Execution Date, Appoint Counsel, and Authorize Funds for Investigative and Expert Assistance to Provide Meaningful Opportunity to Prepare Article 46.05 Motion,” in which he argued that he could not, facing these time constraints and absent mental health expert resources, meet the threshold requirement of Article 46.05.[30] In the renewed motion, pro bono counsel included the limited evidence that he had been able to obtain, without any funding, to substantiate the claim of present incompetency. The renewed motion included the expert opinion of Dr. Diane Mosnik, a neuropsy-chologist with extensive experience in the area of schizophrenia. As Dr. Mosnik was to help pro bono counsel on a “limited basis,” she was only able to give her opinion on the basis of a preliminary review of *372 Panetti’s records. With this limited review, she determined that Panetti had exhibited worsening -signs of acute psychosis in the year prior. Counsel cited Panetti’s prison medical records, observing what he believed were “alarming and aberrational changes in Mr. Panetti’s behavior over the last two years.” Counsel argued that he needed to be appointed and granted funds to retain Dr. Mosnik to develop these preliminary impressions.
The renewed motion also'iterated Panet-ti’s argument that Ford and due process entitled him- to compensated counsel and funding for experts as he developed his Article 46.05 motion. He argued that, without these resources, “the state-court process [would] be ineffective to protect Mr. Panetti’s .., rights” under Ford and Pan-etti. Panetti argued that, while Ford does not require the State to appoint counsel and provide funding in every situation, once a prisoner makes “a colorable showing of incompetency,” it does require the State to provide the-“rudimentary procedural due process protections” that. he sought. Panetti’s pro bono counsel maintained that he had made such a showing, but were being deprived of the means to show more. The court denied the renewed motion, and Panetti appealed to the TCCA.
Meanwhile, the State’s lawyers secured the assistance of Dr. Joseph Penn, Director of Mental Health Services in the Correctional Managed Care division of the University of Texas Medical Branch.[31] By November 24, 2014, Dr. Penn-had completed his work and signed an affidavit describing Panetti’s prison medical records, giving his interpretation of the record regarding the significance of the pattern of medical treatment—both what had been provided and what had not. He never met with Panetti. The State filed this affidavit with the.TCCA, and later with the federal district court, along with the November 4 recording of Panetti and his-family.
On November 25, in a 5-4 opinion, the TCCA affirmed the denial of Panetti’s motions.[32] It ruled that it lacked jurisdiction to review them because the motions did not qualify as Article 46,05 pleadings and suggested that, even construed, to qualify, they were untimely,[33] Within four months of that decision, legislation was introduced in the Texas Senate to require in all future capital cases the notice .that Panetti was not given and to extend the, time that capital defendants and their counsel have to prepare filings.[34] That bill became law just before oral argument in this case.[35]
Reaching the federal courts, Panetti on November 25, 2014, filed a motion for stay of execution and sought appointment of counsel and funding for expert assistance under 18 U.S.C. § 3599, again urging that Ford and due process mandated that he have time. and. these resources. On November 26, 2014, the Wednesday before Thanksgiving, the State filed its “Opposition to Petitioner’s Motion for Stay of Execution,” which responded to all of Panetti’s motions, including the motions for counsel and funding for experts. The State’s opposition relied on Dr. Penn’s affidavit and the audio recording of Panetti and his family, including them as exhibits.[36] Later that *373 day, the court- denied Panetti’s motions for want of an adequate showing of incompetence. It concluded that Panetti failed to show that his mental health had substantially changed since the court’s detailed inquiry seven years earlier. It did not address the State’s argument that any habe-as claim of Panetti’s was procedurally barred,, and hence did not address Panet-ti’s pleas for time. Panetti timely appealed to this court. We stayed his execution for briefing and argument.
Ill
Panetti requests appointment of counsel and funding for expert assistance as provided in 18 U.S.C. § 3599(a)(2):
In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is financially unable to obtain adequate representation or investigation, expert, or other necessary services shall be entitled to the appointment of one or more attorneys....[37]
These statutory rights - may be invoked before a habeas petition is filed. Congress contemplated that the prisoner on death row would have the assistance of paid counsel to prepare a federal habeas petition.[38] The entitlement to paid counsel is absolute, subject to a narrow exception, when potential procedural bars would “indisputably foreclose habeas relief.[39] To deny appointment of counsel, it must be “plain that any subsequent motion that [appointed] counsel might file .., would be futile;”[40] that is, the work of paid, able counsel, with funds to engage experts, could make no difference. Panetti’s request does not fit within this narrow exception.
The State argues that Panetti is procedurally barred because he failed to exhaust his' Ford- claims, in . state court under Article 46.05. Panetti replies that courts may éxcuse exhaustion, where, as applied here, the applicable state procedures provided inadequate due process protections under Ford, leaving only repair to federal court.
Panetti argues that the actions of the State here, combined to render Article 46.05 ineffective to protect his rights. The State ex parte requested an (execution date without notice to Panetti’s counsel, leaving them with only ten days between learning of the impending execution and the deadline to file a motion under Article 46.05 or lose all right of appeal from the state trial court’s judgment.[41] The state court judge suggested that Panetti file a skeletal petition, followed by an amended motion ex *374 panding on the original petition. Meanwhile, the State used its own resources to seek out and file new evidence with the TCCA, all while opposing Panetti’s access to the same resources.
A divided TCCA, in turn, dismissed Pan-etti’s amended motion as neither timely filed nor a proper Article 46.05 motion. The four dissenting judges agreed with Panetti, deeming the court’s treatment of Panetti’s claims “overly formalistic” and believing that it “at best, deprive[d] [him] of a fair opportunity to litigate his claims, thereby violating the constitutionally required procedural protections recognized in Ford.”[42] The dissent argued that the TCCA should have accepted jurisdiction over Panetti’s renewed motion, for his original motion sought relief by the only pathway offered under Texas law, Article 46.05, and “was timely filed.”[43] The court had recently done just that in Druery v. State.[44] In response to the majority’s conclusion that Panetti had not in fact filed an original Article 46.05 motion, the dissent pointed out that the court ought to have properly exercised its jurisdiction because his motions were “intertwined with the substance of relief sought by Article 46.05.”[45] In short, four justices maintained that the majority ignored its own precedent allowing the TCCA to consider such intertwined claims.[46]
Texas’s application of Article 46.05 to Panetti denied him due process. That procedure, at least as applied to him, was ineffective to protect his right to be free from cruel and unusual punishment under Ford and its progeny. Texas itself has recognized as much by recently passing legislation to ensure that no other capital defendant is placed in the situation that Panetti and his counsel faced.[47] That initiative commendably addresses the core concern going forward, but does not address the denial here.
Ordinarily, a state prisoner must exhaust all of his state remedies to be entitled to habeas review.[48] But where “circumstances exist that render [the state] process ineffective to protect the rights of the applicant,” we are empowered to reach those claims absent exhaustion.[49] We find that such circumstances exist here. Federal courts also ordinarily apply a deferential standard of review to the claims of state prisoners seeking habeas relief.[50] But where, as here, the state courts have not reached the merits of a petitioner’s claims, *375 federal courts will review de novo.[51] We are not prepared to make the predictive judgment, absent a procedural bar to federal review and with no AEDPA deference to a decision of the state court, that Panet-ti’s federal habeas claim would be futile. He is entitled to counsel to pursue that claim, and its denial was error.
Nor do we see justification for denying Panetti funding for experts and other investigative resources.[52] Under 18 U.S.C. § 3599(f), the court “may authorize the defendant’s attorneys to obtain such services on behalf of the defendant” upon “a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant.” A district court may deny an inmate’s request for funds to pursue federal habeas relief “when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought-after assistance would only support a mer-itless claim, or (c) when the sought-after assistance would-only supplement prior evidence.”[53]
The federal district court did not mention the statutory standard of “reasonable] necessity],” but implicitly found that Panetti had not met it in holding that, “[c]onsidering ... the wealth of evidence on the issue of Panetti’s competency,” his “attempt to begin the cycle of litigation afresh should be rejected.” The reality is that a decade has now passed since the last determination of whether this con-cededly mentally ill petitioner is competent to be executed.[54] Given that lapse of time, we cannot - say that any new evidence would only be “supplemental” to that already contained in the record.
As Justice Powell wrote in Ford, due process is breached when “affected parties” are prevented “from offering contrary medical evidence or even from explaining the inadequacies of the State’s examinations.”[55] Panetti asserts that the State here sought to deny him a meaning *376 ful opportunity to do just that. It deployed its able death penalty lawyers, aided by a medical expert, Dr. Penn, and recorded Panetti with his family—filing Dr. Penn’s affidavit and the recording with both, the TOCA and federal district court.[56] Meanwhile, Panetti lacked the funds to acquire his own up-to-date evidence; his last professional' competency evaluation was conducted a decade ago. As the argument goes, it is one thing to respond to a petitioner’s claims on the existing record; it is quite another, with assistance of counsel and paid experts, to generate new evidence while preventing the petitioner from doing the same. All this without initially notifying Panetti of his impending execution, resulting in an impossible deadline—a flaw that has since been ameliorated by the Texas legislature to provide notice and time for these sorts of claims to be developed. As the Court recently reminded in Moore, “[t]he clearest and most reliable objective evidence of contemporary values comes from state legislative judgments” because it is those bodies that “are constituted to respond to the will and consequently the moral values of the people.”[57] In introducing the bill to require notice to defendants whose execution dates are set and 'the provision of enough time to prepare a defense, the authoring Texas Senator said:
Attorneys for capital defendants should have the same notice as the state and the court about when executions will be set. Requiring sufficient notice of the scheduling of execution dates will ensure that defendants have an opportunity to fairly prepare for the impending execution.[58]
We agree.
With the benefit of time and argument, we must conclude that the district court’s conclusion was tainted by the. inadequate due process protection provided to Panetti by the State. We need not and do not treat the merits of Panetti’s claim that he is incompetent to be executed—that is for the district court after Panetti has been afforded the opportunity to develop his position. We conclude that the district court abused its discretion in denying Pan-etti funding for counsel and for experts to assist in preparing his contemplated federal habeas petition. To the extent the district court made findings of fact regarding Panetti’s competency to be executed, they must be vacated. It is the case that a petitioner bringing claims under Ford and the State crafting a response must travel in uncharted water—uncertainties for all. This .opinion does not undertake to resolve these uncertainties; it rather insists that their resolution proceed with fully armed counsel on both sides—the essence of due process.
IV
The dissent argues that Texas’s adversarial posture played no role in the decisions of the Texas Court of Criminal Appeals or the federal district court because those courts did not rely on the evidence the State produced. With respect, the dissent’s observation that the TCCA “did not *377 reach the merits of Panetti’s claim” misses the point. The very question which divided that court 5-4 was whether.Panetti’s struggle to comply with the strictures of Article 46.05, without funded .counsel or expert assistance and with truncated deadlines, was sufficient in .the face of the State’s decidedly adversarial opposition. The point made by the dissenting judges was that the court ought to accept the pleading despite these shortcomings because Panet-ti could not “attach items in support of a motion under Article 46.05 due to a lack of funds to obtain assistance from mental-health experts whose opinions are required to make a substantial showing under the article;” and that his argument was, at the least, “intertwined with the substance of the relief sought by Article 46.05.”[59] And none of this can change the reality that the TCCA majority, while ignoring its own precedent, faulted Panetti’s request for re1 lief for deficiencies that were themselves a product of the State-created plight faced by Panetti’s counsel, all with a backdrop of reassuring comfort tendered by the State’s medical expert that nothing had changed in Panetti’s competency. And the district court, whose decision is before us on appeal, in rejecting Panetti’s claim on the merits, stated that it had considered “the wealth of evidence on the issue of Panetti’s competency.” While that basis for conclusion surely included all of the State’s last-minute submissions, it was without the benefit of evidence that Panetti sought to produce by process denied to him.
The dissent further argues that any shortcomings of the state court process were made harmless by the intervening ruling of the federal district court; that the same court that had earlier denied Panet-ti’s Ford claim was well-equipped to decide whether Panetti had overcome the presumption of competence attendant to that 2008 ruling. This argument fails. On November 19, 2014, the Texas State trial court rejected Panetti’s renewed motion, which contained the evidence that .Panetti’s unfunded counsel had been able to assemble up to that point. Six days later, on November 25, 2014, the TCCA affirmed that decision. That same day, Panetti filed in the federal district court his .motion for a stay, appointment of counsel, and funding for experts, with Texas opposing.
The district court in turn did not confront the issue of exhaustion of state remedies posed by the decision of the TCCA. Pressed by the looming execution, date, it elected to proceed to the merits, as it was entitled to do. Doing so, however, did not address Panetti’s pleas that the state had denied him the time and resources required to present his claim—resources that the state was deploying against him, This left the district court to weigh Panetti’s stunted submission against the state’s evidence of Dr. Penn’s affidavit and the recording of Panetti and his family and his experience in the earlier competency proceedings.[60] The result was nigh inevitable. Rather than a cleansing of error, as the dissent has it, the district court did not remedy the denial of due'process wé have described: "Instead, it proceeded upon the flawed record that denial produced.
V
Finally,, lest the length and complexity of Panetti’s path in the federal courts be seen as a sane'man playing the system, we remind that there can be no dispute that *378 Panetti is mentally ill, and was so long before his crime. Before his conviction, he had been “hospitalized numerous times” and prescribed medication that “would be difficult for a person not suffering from extreme psychosis even to tolerate.”[61] In 1986, Panetti’s then-wife sought judicial relief from the Texas state courts after Panetti “became convinced the devil had possessed their home and ... had buried a number of valuables next to the house and engaged in other rituals.”[62]
Seven years have passed since he was last adjudged competent. Since then, as recounted by the amici: (1) escorting officers have noticed that Panetti often acts in an irrational and delusional manner; (2) despite having refused mental health treatment'for nearly two decades, Panetti has, in the last few years, begun requesting mental health assistance and medication; (3) Panetti has expressed the belief that Texas has implanted a listening device in his tooth that sends command messages to his brain; (4) Panetti reads the Gospel to help drown out the voices he hears; (5) Panetti has expressed the belief that CNN anchor Wolf Blitzer displayed Panetti’s stolen TDCJ ID card during a report; and (6) Panetti has claimed to be the father of actress and singer Selena Gomez.
Nor does Panetti present as a poster child of abuse—seeking a determination of competence with each setting of an execution date. Panetti is from a small universe of death row prisoners; he has a long history of mental illness that predates his crime and following a judicial determination of his competency to be executed, he experienced a delay of another decade of solitary, brought about by a wholly extraneous issue that itself was resolved by the Supreme Court.
Process matters, and gives rise to the aged observation that, in the law, the shortest distance between two points is seldom a straight line. Truncated hearings and exacting strictures can squeeze the life from due process, while perversely creating years of delay, all for a refusal to give a few days of time—this most seriously so when the issue is not tohether a defendant is mentally ill, but the more subtle reaches of his disability. There is no justification for executing the insane, and no reasoned support for it, as only a glance at the brief of amici—filed by able and fervent citizens spanning the spectrum of political views— will confirm. We and our state court brethren struggle to get it right, an effort not always successful, for we yet are just lawyers, subject to error. Mr. Wiercioch has, in our best traditions, served his client for years with limited resources and time. To refuse to give him the time and resources critical to review Panetti’s present condition is error, borne of understandable but nevertheless error-producing frustration over the delay baked into our death penalty jurisprudence—with its twists and turns between two sovereigns. The core deficiencies underlying our finding of denial of due process have commendably been alleviated by the Texas legislature, but stopping there leaves Panetti in the dust.
We reverse the district court’s denial of appointed counsel and expert funding. We vacate, as premature, the district court’s findings on the merits of Panetti’s Ford claim without comment on their ultimate soundness and remand to the district court with instructions to appoint counsel, authorize funds for investigative and expert assistance, and conduct any further proceedings to determine afresh Panetti’s competency to be executed. Delivery of the *379 process due protects the prisoner and in doing so protects us all.

. Panetti v. State, No. AP-72,230 (Tex. Crim. App. Dec. 3, 1997) (unpublished); Ex parte Panetti, No. WR-37,145-01 (Tex. Crim. App. May 20, 1998) (unpublished).

. Panetti v. Quarterman, 551 U.S. 930, 937, 127 S.Ct, 2842, 168 L.Ed.2d 662 (2007).

. Id. at 938, 127 S.Ct. 2842.

. Id.

. 477 U.S. 399, 106 S.Ct 2595, 91 L.Ed.2d 335 (1986) (holding that the Eighth Amendment bars states from executing insane prisoners),

. Panetti v. Dretke, 401 F.Supp.2d 702, 704 (W.D. Tex. 2004).

. Id.

. Id. at 705,

. Id. at 712.

. Panetti v. Dretke, 448 F.3d 815 (5th Cir. 2006).

. Panetti v. Quarterman, 551 U.S. at 960, 127 S.Ct. 2842.

. Id. at 958-59, 127 S.Ct. 2842.

. Id. at 960, 127 S.Ct 2842.

. 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that it is unconstitutional to impose capital punishment for crimes committed under the age of 18).

. 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding- that the execution of persons with intellectual disabilities is cruel and unusual).

. Panetti v. Quarterman, 551 U.S. at 962, 127 S.Ct. 2842.

. Panetti v. Quarterman, No. A-04-CA-042-SS, 2008 WL 2338498, at *37 (W.D. Tex. Mar. 26, 2008).

. 554 U.S. 164, 178, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008).

. Ex parte Panetti, No. WR-37,145-02, 2009 WL 3368707 at *1 (Tex. Crim. App. Oct. 21, 2009) (unpublished); see also Tex Code Crim. Proc. Ann. art 11.071, § 5 (West 2016).

. Panetti v. Thaler, No. A-09-CA-774-SS, 2012 WL 290115, at *2 (W.D. Tex. Jan. 31, 2009).

. 309 S.W.3d 558 (Tex. Crim. App. 2010) (holding that the evidence in that case supported implied findings of-fact that defendant’s mental illness was severe enough to render him incompetent to proceed pro se).

. Panetti v. Thaler, 2012 WL 290115, at *2.

. Ex parte Panetti, 326 S.W.3d 615 (Tex. Crim. App. 2010) (mem. op.); Panetti v. Texas, 564 U.S. 1023, 131 S.Ct. 3027, 180 L.Ed.2d 852 (2011) (mem. op.).

. Panetti v. Thaler, 2012 WL 290115, at *82.

. Panetti v. Stephens, 727 F.3d 398 (5th Cir. 2013).

. Panetti v. Stephens, — U.S. —, 135 S.Ct. 47, 190 L.Ed.2d 52 (2014) (mem. op.).

. Panetti v. State, No. AP-77, 2014 WL 6764475, at *1 (Tex. Crim. App. Nov. 25, 2014) (unpublished).

. Tex. Code Crim. Proc. Ann. art. 43.141(c) (West 2003). At the next legislative session, before oral argument in this case, the Texas legislature corrected this deficiency, requiring notice to capital defendants and requiring all executions be set a minimum of ninety-one days out. Act of May 29, 2015, 84th Leg., R.S., ch. 951, 2015 Tex. Sess. Law Serv. 951 (West).

. See Tex. Code Crim. Proc. Ann. art. 46.05(1-1) ("[T]he court of criminal appeals may not review any finding of the defendant’s competency made by a trial court as a result of a motion filed under this article if the motion is filed on or after the 20th day before the defendant’s scheduled execution date.”).

. See Panetti v. State, 2014 WL 6764475, at *1.

. Dr. Penn is board certified in both general and forensic psychiatry. His Curriculum Vitae demonstrates that he has served as an expert witness regularly since 1996.

. Panetti v. State, 2014 WL 6764475, at *1.

. Id.

, Tex., S.B. 1071, 84th Leg., R.S. (2015) (introduced March 9, 2015).

. Tex. Code Crim. Proc. Ann. art. 43.141(b-1), (c) (West 2016) (effective September 1, 2015).

, The State successfully employed similar evidence eight years ago, when it'presented a prison-taped audio recording of Panetti with *373 his family to the same federal district court judge. In then rejecting Panetti’s Ford claim, the district court quoted directly from that tape.

. 18 U.S.C. § 3599(a)(2) (emphasis added).

. See McFarland v. Scott, 512 U.S. 849, 855-56, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994).

. Cantu-Tzin v. Johnson, 162 F.3d 295, 300 (5th Cir. 1998). Other courts have termed this limitation as one in which relief is "clearly” foreclosed or whether appointment of counsel would "be a wholly futile gesture.” Chavez v. Sec’y, Fla. Dept. of Corr., 742 F.3d 940, 946 (11th Cir. 2014).

. Christeson v. Roper, — U.S. —, 135 S.Ct. 891, 895, 190 L.Ed.2d 763 (2015). In that case, the Court recognized that "Christe-son faces a host of procedural obstacles to having a' federal court consider his habeas petition.” Id.

. Tex. Code Crim. Proc. Ann. art, 46.05(1-1) ("[T]he court of criminal appeals may not . review any finding of the defendant’s-competency made by a trial, court as a result of a motion filed under this article if the motion is filed on or after the 20th day before the defendant's scheduled execution date.”).

. Panetti v. State, 2014 WL 6764475, at *1 (Alcala, J., dissenting).

. Id.

. 412 S.W.3d 523, 536 (Tex. Crim. App. 2013) (permitting review of both Article 46.05 competency motion and supplement to that motion, when only original motion was timely filed for purposes of twenty-day rule).

. Panetti v. State, 2014 WL 6764475, at *1 (Alcala, J., dissenting).

. See Staley v. State, 420 S.W.3d 785, 787 (Tex. Crim. App. 2013) (concluding that it had jurisdiction to review merits of collateral involuntary-medication order that was "intertwined” with trial court’s ruling that defendant was competent to be executed). Rules that are not thoroughly and consistently applied are not procedural bars to federal jurisdiction, Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) ("[O]nly a ‘firmly established and regularly followed state practice’ may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim.”).

. See Tex. S.B. 1071, 84th Leg., R.S. (2015) ("An act relating to requiring notice of the scheduling of an execution date and the issuance of a warrant of execution.”).

. 28 U.S.C. § 2254(b)(1)(A) (2012).

. Id. § 2254(b)(1)(B)(ii).

. Id. § 2254(d).

. See Cone v. Bell, 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) ("Because the Tennessee courts did not reach the merits of Cone’s Brady claim, federal habeas review is not subject to the deferential standard that applies under AEDPA.... Instead, the claim is reviewed de novo.”); Hoffman v. Cain, 752 F.3d 430, 437 (5th Cir. 2014) ("For claims that are not adjudicated on the merits in the state court, we apply a de novo standard of review.”).

. See Brown v. Stephens, 762 F.3d 454, 459 (5th Cir. 2014) (citing Woodward v. Epps, 580 F.3d 318, 334 (5th Cir. 2009) and Smith v. Dretke, 422 F.3d 269, 288 (5th Cir. 2005)).

. Smith, 422 F.3d at 288 (citations omitted) (addressing request for funds to obtain the assistance of an expert psychologist in federal habeas proceedings).

. The State directs us to an unpublished case, Charles v. Stephens, where we affirmed the district court’s denial of funding for experts because of the underlying lack of merit of Charles’s Ford claim. 612 Fed.Appx. 214 (5th Cir. 2015) (unpublished), cert. denied, — U.S. —, 135 S.Ct. 2075, 191 L.Ed.2d 974 (2015). We note several important distinctions from this case. First, unlike Panetti, Charles had paid counsel. Id. at 216 n.3. ("The district court granted Charles’s motion to appoint counsel and this decision is not at issue on appeal.”) Second, while Panetti’s competency has been at issue since his trial, Charles raised the question of competency for the first time two months before his scheduled execution, id. at 216, which, as we observed, gives rise to the inference that Charles was making the “the kind of ‘|l]ast-minute filings that are frivolous[,] designed to delay executions!, and] can be dismissed in the regular course.” Id. at 222 (quoting Panetti v. Quarterman, 551 U.S. at 946, 127 S.Ct. 2842). Third, as discussed supra, and unlike in Charles, the State here took an adversarial posture towards Panetti's motions.

. Ford, 477 U.S. at 424, 106 S.Ct. 2595 (Powell, J. concurring).

.. The State made sure to include the recording it had made because it was the same kind of evidence that had previously persuaded the district court to find Panetti competent to be executed—lending further support to the conclusion that the State behaved adversarially.

. Moore v. Texas, — U.S. —, 137 S.Ct. 1039, 1056, 197 L.Ed.2d 416 (2017) (quoting Atkins v. Virginia, 536 U.S. 304, 312, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) and Gregg v. Georgia, 428 U.S. 153, 175, 96 S.Ct. 2909, 49 L,Ed.2d 859 (1976)) (internal quotation marks omitted).

. Senate Research Center, Bill Analysis, Tex. S.B. 1071, 84th Leg., R.S. (2015).

. Panetti, 2014 WL 6764475. The court had done just that in Druery. Id.; see Druery v. State, 412 S.W.3d 523, 536 (Tex. Crim. App. 2013).

. "The Court finds, considering the question in light of the wealth of evidence on the issue of Panetti’s competency previously amassed in this case...."

. Panetti v. Quarterman, 551 U.S. at 936, 127 S.Ct. 2842.

. Id.